IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 6, 2002 Session

## STATE OF TENNESSEE v. TRAVIS THOMPSON, INDIVIDUALLY AND DOING BUSINESS AS THOMPSON ENTERPRISES, LLC AND GOLD'S GYM, AND THOMPSON ENTERPRISES, LLC, A DELAWARE LIMITED LIABILITY COMPANY, DOING BUSINESS AS GOLD'S GYM

Appeal from the Chancery Court for Davidson County
No. 99-2003-III    Ellen Hobbs Lyle, Chancellor

No. M2001-02354-COA-R3-CV - Filed March 20, 2003

This case involves the Tennessee Health Club Act. The defendant/appellees purchased a health club and failed to obtain a certificate of registration. Three months later, the health club owners obtained a certificate of registration. The State of Tennessee, through the Attorney General, filed a lawsuit against the health club owners alleging violations of the Tennessee Consumer Protection Act and the Health Club Act seeking injunctive relief, substantial fines, and several hundred thousand dollars in restitution. The trial court granted partial summary judgment to the health club owners, holding that the remedies under the Health Club Act were available only to consumers, not the State, and that there was no proof of an "ascertainable loss" under the Tennessee Consumer Protection Act. The trial court also granted the health club owners' request for attorney's fees and costs. The State appeals. We affirm in part and reverse in part, finding, inter alia, that the State may seek remedies under the Health Club Act on behalf of consumers, affirming the trial court's ruling that proof of an ascertainable loss is required, and affirming the award of attorney's fees.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Reversed in Part and Affirmed in Part

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Paul G. Summers, Attorney General and Reporter; Timothy C. Phillips, Assistant Attorney General; and Dana M. Ausbrooks, Assistant Attorney General, Nashville, Tennessee, for appellants, State of Tennessee.

William B. Jakes, III, for appellees Travis Thompson, Individually and doing business as Thompson Enterprises, LLC and Gold's Gym, and Thompson Enterprises, LLC, a Delaware Limited Liability Company, doing business as Gold's Gym.

**OPINION**

Defendant/Appellee Travis Thompson purchased a Gold's Gym ("Club") in Antioch, Tennessee on March 1, 1999 and began operating the gym on April 16, 1999. At the time of the purchase, the Club had approximately 600 to 700 members, and was adding approximately twenty-five members each month. In addition, Thompson, under the name of Thompson Enterprises, LLC,[1] purchased at least 2000 membership agreements from another local health club. Defendant/Appellee Thompson Enterprises, LLC (Travis Thompson and Thompson Enterprises, LLC, collectively "Thompson")[2] began operating the Club on June 24, 1999.

At the time Thompson purchased the Club, it had no certificate of registration, as mandated by section 47-18-302,[3] the provision of the Tennessee Code Annotated that regulates health clubs, sometimes referred to as the Health Club Act.[4] Thompson was unaware of his responsibility to obtain a certificate of registration for the Club. Appellant/State of Tennessee ("State") alleged that it contacted Thompson by mail and telephone numerous times during April and May 1999 regarding the lack of a certificate of registration.[5] Thompson applied for a certificate of registration on June 22, 1999, and it was issued on July 1, 1999. Thus, Thompson had operated Gold's Gym for a period of approximately three months without a valid certificate of registration.

On July 16, 1999, the Attorney General, on behalf of the State's Division of Consumer Affairs of the Department of Commerce and Insurance, filed a lawsuit against Thompson and Thompson Enterprises alleging violation of the Health Club Act,[6] and the Tennessee Consumer Protection Act ("Consumer Protection Act").[7] The State requested, inter alia, that:

> . . . [T]his Court make such orders or render such judgments as may be necessary to restore to any consumer or other person any ascertainable losses suffered by reason

---

[1] Thompson Enterprises, LLC is comprised of Thompson and various members of his family. It appears that Thompson purchased the additional memberships in his name, doing business as Thompson Enterprises, LLC, but that Thompson Enterprises, LLC was not actually formed until June 24, 1999.

[2] Thompson and Thompson Enterprises, LLC will be collectively referred to as "Thompson," except where the sentence indicates a reference to Thompson individually.

[3] Section 47-18-302 of the Tennessee Code Annotated states in part: "(a) It is unlawful to operate a health club unless a valid certificate of registration is obtained for each location where health club services or facilities are provided and payment of the fee required for such registration is made. . . ." Tenn. Code Ann. § 47-18-302(a) (2001).

[4] Tenn. Code Ann. §§ 47-18-301 to -320 (2001).

[5] Thompson argued that the first attempt the State made to contact the Club was May 10, 1999.

[6] Tenn. Code Ann. §§ 47-18-301 to -320 (2001).

[7] Tenn. Code Ann. §§ 47-18-101 to -125 (2001).

of the alleged violations of the Tennessee Consumer Protection Act, including but not limited to requiring that Defendants notify in writing each and every consumer that entered into a health club agreement with Defendants while Defendants were not registered or the health club's registration had lapsed, or were purchased by Defendants from an unregistered health club or purchased by Defendants while unregistered, that the agreement is unenforceable against the consumer and the consumer is entitled to a refund less that portion of the total price which represents actual use of the facilities and less the cost of goods and services consumed by the consumer as provided in [section 47-18-303 of the Tennessee Code Annotated][8] plus statutory interest.

The State sought civil penalties of $1,000 for each violation, as provided in section 47-18-108(b) of the Tennessee Code Annotated.[9] The State later amended its complaint to include an additional

---

[8]Section 47-18-303 of the Tennessee Code Annotated states:

A health club agreement shall be unenforceable against the buyer, and the buyer shall be entitled to a refund less that portion of the total price which represents actual use of the facilities and less the cost of goods and services consumed by the buyer if:

. . . .

(2) The health club fails to obtain or fails to maintain a certificate of registration as required by this part; . . .

Tenn. Code Ann. § 47-18-303 (2001).

[9]Section 47-18-108(b) of the Tennessee Code Annotated provides:

(b) (1) The court may make such orders or render such judgments as may be necessary to restore to any person who has suffered any ascertainable loss by reason of the use or employment of such unlawful method, act, or practice, any money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, which may have been acquired by means of any act or practice declared to be unlawful by this part.

(2) The court may also enter an order temporarily or permanently revoking a license or certificate authorizing that person to engage in business in this state, if evidence has been presented to the court establishing knowing and persistent violations of this part.

(3) The court may also order payment to the state of a civil penalty of not more than one thousand dollars ($1,000) for each violation.

(4) The court may also order reimbursement to the state for the reasonable costs and expenses of investigation and prosecution of actions under this part, including attorneys' fees.

Tenn. Code Ann. § 47-18-108(b) (2001).

request:

> That the court order that Defendants notify each and every consumer that entered into a health club agreement with Defendants while Defendants were not registered or the health club's registration had lapsed, or were purchased by Defendants from an unregistered health club or purchased by Defendants while unregistered, that the agreement is unenforceable against the consumer and the consumer is entitled to a refund less that portion of the total price which represents actual use of the facilities and less the cost of goods and services consumed by the consumer as provided in [section 47-18-303 of the Tennessee Code Annotated] plus statutory interest.

The Answer filed by Thompson included a defense of selective prosecution.

The State sought a temporary injunction, seeking to require Thompson to notify all members that their agreements were unenforceable during the period of time in which the Club had no certificate of registration, and informing them of various remedies, including refunds and restitution. The trial court granted the injunction, requiring Thompson to send letters to consumers who entered into an agreement with Gold's Gym during the pertinent time frames. Each letter was to inform the consumer that his health club agreement may be unenforceable, and that he may be entitled to a refund or other remedy.

Prior to trial, the parties filed a myriad of motions and cross motions. As a result of these motions, the trial court held, inter alia, that Thompson had violated the Health Club Act and consequently also violated the Consumer Protection Act.[10] In deciding the State's first motion for partial summary judgment, the trial court determined that the remedies in the Consumer Protection Act were not exclusive, and that the State was permitted to pursue the remedies available under both the Health Club Act, section 47-18-303, and the Consumer Protection Act, section 47-18-108. The trial court noted that the Health Club Act, section 47-18-320(b), specifically makes the remedies of the Consumer Protection Act available upon a violation of the Health Club Act, and the remedies available under the Consumer Protection Act are not the exclusive remedies available to the State.

_____

[10]Section 47-18-320 of the Tennessee Code Annotated states:

(a) A violation of this part constitutes a violation of the Tennessee Consumer Protection Act, compiled in part 1 of this chapter.

(b) For the purpose of application of the Tennessee Consumer Protection Act, any violation of the provisions of this part shall be construed to constitute an unfair or deceptive act or practice affecting the conduct of any trade or commerce and subject to the penalties and remedies as provided by that act.

Tenn. Code Ann. § 47-18-320 (2001). Thus, a violation of the Health Club Act's requirement for a certificate of registration is *per se* a violation of the Consumer Protection Act as well.

*See* Tenn. Code Ann. § 47-18-112.[11]  Thus, the remedies listed in the Health Club Act, section 47-18-303, would also be available to the State.  In its order on the State's second motion for partial summary judgment, however, the trial court held that the State was limited to the remedies in the Consumer Protection Act.  The trial court stated:

> [Section 47-18-303(2) of the Health Club Act] provides that the conduct of the defendants in not obtaining registration causes a buyer's contract to be unenforceable against the buyer, and the buyer is entitled to a refund less that portion of the total price which represents actual use of the facilities and less the cost of goods and services consumed by the buyer.  While a consumer/buyer could use section 47-18-303 as a remedy provision against a health club, the Court determines that the plaintiff, State of Tennessee is required to pursue its remedies as to vindicating consumers as provided for in [section 47-18-108(b)(1)] of the Tennessee Consumer Protection Act.

Hence, the trial court ultimately determined that the State may not pursue a remedy through the Health Club Act, section 47-18-303, but rather through the Consumer Protection Act, section 47-18-108.  The trial court dismissed the State's request that Thompson be required to pay restitution to consumers under section 47-18-104, finding that the State had not proffered evidence of any "ascertainable loss" by a consumer as required by the Consumer Protection Act.  The trial court dismissed Thompson's claim of selective prosecution.

After resolution of the pretrial motions, the issues remaining for discovery and trial were: (1) whether Thompson caused a likelihood of confusion or misunderstanding as to its certification under section 47-18-104(b)(2) of the Consumer Protection Act; (2) whether Thompson's actions represented that a consumer transaction conferred or involved rights, remedies, or obligations that it did not have, pursuant to section 47-18-104(b)(12); and (3) whether the acts were unfair or deceptive to consumers, under section 47-18-104(b)(27), of the Consumer Protection Act.

During discovery, Thompson sent interrogatories to the State, asking the State to detail the relief it sought.  After discovery skirmishes, the State sent Thompson a letter stating that it was seeking refunds on behalf of the health club members in the amount of $929,030.03, to be reduced based on Thompson's proof with respect to actual use.

The case was heard by a jury on February 5, 2001.  At the hearing, the State called Thompson and Kenneth Wright, a former general manager of the Club.  The State also called Ray Palumbo ("Palumbo"), a former member of Powerhouse Gym, whose contract was among those purchased by Thompson.  Palumbo cancelled his contract with Powerhouse, but even after he cancelled,

---

[11]Section 47-18-112 of the Tennessee Code Annotated states: "The powers and remedies provided in this part shall be cumulative and supplementary to all other powers and remedies otherwise provided by law. The invocation of one power or remedy herein shall not be construed as excluding or prohibiting the use of any other available remedy." Tenn. Code Ann. § 47-18-112 (2001).

Thompson continued efforts to collect on Palumbo's account. The State identified no consumers seeking relief because of the Club's lack of a valid certificate of registration.

At the end of the State's proof, Thompson's counsel moved for a directed verdict, arguing that there was no evidence that he had committed a deceptive act, no proof that anyone was confused or misled because of the Club's failure to have a certificate of registration, and no proof of continuing harm, which would be necessary to justify the injunctive relief the State requested in its complaint.[12] The trial court granted Thompson's motion for directed verdict. Since the trial court had determined prior to trial that Thompson's failure to register the Club was *per se* a violation of the Consumer Protection Act, the trial court fined Travis Thompson individually and Thompson Enterprises $1,000 each. Finally, the trial court agreed to hear the State's request for costs, expenses, and attorney's fees, but limited the request to the period of time prior to the filing of the lawsuit.

After a subsequent hearing, the trial court ordered that Thompson pay the State fees and expenses incurred before the lawsuit was filed, which amounted to $1,490.40. The trial court also, however, ordered that the State pay Thompson $10,000 in attorney's fees pursuant to the Equal Access to Justice Act of 1984, sections 29-37-101 to -106 of the Tennessee Code Annotated. The trial court reasoned that the State's failure to produce a single health club member with any ascertainable loss to support a claim for restitution, and the State's failure to even attempt to locate such a person until three weeks before the trial, rendered the State's "claim against the defendants for restitution for ascertainable loss to consumers" unsupported by substantial evidence. In the trial court's oral ruling awarding attorney's fees and costs to Thompson, the trial judge stated:

> . . . . The defendants have never disputed that for three months they were not in compliance with the statutes requiring health club registration. Upon learning of the necessity of the registration, the defendants obtained the registration. Based upon the defendants' noncompliance, the State reasonably expended resources prior to the date the defendants became registered (July 2, 1999) to investigate the defendants' violation and obtain the defendants' compliance. For this reason the Court awards the State its attorneys fees and costs incurred prior to filing the lawsuit in the above-captioned matter for the efforts expended in bringing the defendants into compliance.
>
> But once the defendants came into compliance, the State continued to pursue this matter by filing a lawsuit and seeking not only fines and fees connected with the noncompliance, but also restitution for harm to consumers resulting from the lack of registration. The State has admitted that from the date the lawsuit was filed not a single consumer ever complained or alleged harm due to nonregistration.
>
> In that the defendants acknowledged and admitted from the outset and in their answer the three month period of not being registered, the major component of the

---

[12]The State, in its complaint, requested injunctive relief to enjoin Thompson from engaging in acts and practices that the State alleged violated the Health Club Act and the Consumer Protection Act, such as representing that the agreements in question were enforceable.

discovery and costs incurred in this case pertained to the defendants defending against the restitution claim.

The Court ultimately awarded the plaintiff $1,000.00 in fines to be imposed upon defendant Travis Thompson and $1,000.00 in fines to be imposed upon defendant Thompson Enterprises, LLC for being unregistered by the State for three months. As to the claim for restitution, the Court dismissed that cause of action on summary judgment as to some alleged violations of the Tennessee Consumer Protection Act and by directed verdict at trial as to the remaining ones but not until costly discovery and motions had been pursued to defend against the restitution claims.

Plaintiff's counsel has admitted to the Court (in a hearing on February 2, 2001) that from the day the lawsuit was filed not a single consumer had ever complained or alleged ascertainable loss due to the defendants' brief period of not being registered. The plaintiff also stated that it had not made any effort to locate witnesses to support the restitution claims until three weeks before the trial. The Court concludes that the plaintiff's claim against the defendants for restitution for ascertainable loss to consumers was unsupported by substantial evidence.

Fees incurred by the defendants easily exceed the maximum recovery of $10,000.00 authorized by Tennessee Code Annotated section 29-37-104.

The record also establishes that the defendants made an offer of judgment in this matter on March 14, 2000, in the amount of $2,000.00. The Court determines that the defendants were the prevailing parties in this matter because they prevailed on 16 of the 17 theories asserted by the State. The only theory the defendants did not prevail on was one on which they had admitted liability from the beginning. The judgment finally obtained in this matter was not more favorable than the offer of judgment. Costs of $848.00 for depositions and a court reporter fee were incurred by the defendants in this matter.

Thus, the trial court awarded the State a minimal amount of fees and costs, while awarding Thompson the maximum amount of attorney's fees available under the Equal Access to Justice Act, as well as costs. The State now appeals.

On appeal, the State argues that the trial court erred in holding that the remedies available to the State under the Health Club Act are limited to the remedies provided in the Consumer Protection Act; that the trial court erred in holding that consumers did not suffer an ascertainable loss as contemplated in the Consumer Protection Act, section 47-18-104(b)(2); that the trial court erred in denying the State's motion for partial summary judgment on several issues; that the trial court erred in granting Thompson's motion for directed verdict; and finally, that the trial court erred in awarding attorney's fees to Thompson under the Equal Access to Justice Act of 1984.

As to the State's issue on appeal regarding Thompson's motion for partial summary judgment, a motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Id.* Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

Moreover, the interpretation of statutory law is a judicial function, *State ex rel. Comm'r of Transp. v. Med. Bird Black Bear White Eagle*, 63 S.W.3d 734, 754 (Tenn. Ct. App. 2001) (citations omitted), and it is our role to "ascertain and give effect to the intention and purpose of the legislature." *Gleaves v. Checker Cab Transit Corp.*, 15 S.W.3d 799, 802 (Tenn. 2000) (quoting *Carson Creek Vacation Resorts, Inc. v. State Dep't of Revenue*, 865 S.W.2d 1, 2 (Tenn. 1993)).

We address first the State's argument that the trial court erred in holding that the State was not entitled to relief under the Consumer Protection Act because it failed to produce evidence that a consumer had sustained an "ascertainable loss" stemming from the Club's failure to have a certificate of registration for a three-month period. This holding was based on a provision in the Consumer Protection Act, section 47-18-108(b)(1) of the Tennessee Code Annotated. The statute provides:

> The court may make such orders or render such judgments as may be necessary to restore to any person who has suffered any *ascertainable loss* by reason of the use or employment of such unlawful method, act, or practice, any money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, which may have been acquired by means of any act or practice declared to be unlawful by this part.

Tenn. Code Ann. § 47-18-108(b)(1) (2001) (emphasis added). In granting Thompson's motion for partial summary judgment on this issue, the trial court stated:

> . . . . The record before the Court fails to demonstrate any person who has suffered any ascertainable loss by reason of the defendants failing to inform the consumer that the health club is not licensed. Specifically, the State acknowledges in its response to the defendants' motions to dismiss, which response was filed, July 31, 2000, that it has responded to the defendants' discovery there are no members whom the

-8-

plaintiff knows entered into agreements with the defendants because of the representation that Gold's Gym was duly registered with the State. . . .

Thus, the trial court dismissed the State's claim for restitution under the Consumer Protection Act because the State could not identify an ascertainable loss.

On appeal, the State asserts that it was not required to produce a consumer because actual deception need not be proven. The State also argues that consumers suffered an ascertainable loss because they were unable to cancel their health club contracts.

Here, the State sought, and was granted, injunctive relief requiring Thompson to send letters to consumers with health club contracts, notifying them that their health club agreements might be unenforceable and that they might be entitled to a refund or other remedy. The record on appeal does not contain the letter, but there is no indication in the record that it was not sent. Even after such notification, the State failed to produce even one consumer who wanted relief because Thompson did not have a certificate of registration for a three-month period. Despite this, the State continued to seek hundreds of thousands of dollars in restitution. Under these circumstances, there is no "person who has suffered any ascertainable loss" as specified in section 47-18-108(b)(1). Accordingly, we must conclude that the trial court did not err in dismissing the State's claim for restitution relating to consumers' health club agreements.

The State also appeals the trial court's ruling that only a consumer may pursue remedies under the Health Club Act, section 47-18-303 of the Tennessee Code Annotated. The Health Club Act provides that where, as here, there has been a violation of the provision requiring a certificate of registration, the health club agreement becomes:

> . . . unenforceable against the buyer, and the buyer shall be entitled to a refund less that portion of the total price which represents actual use of the facilities. . . .

Tenn. Code Ann. § 47-18-303 (2001). Thus, the Health Club Act details relief available to the consumer, but does not mention whether the State may obtain relief on the consumer's behalf under the Health Club Act. The Health Club Act, however, includes another provision stating that a violation of the requirement that a health club maintain a valid certificate of registration "constitutes a violation of the Tennessee Consumer Protection Act. . . ." Tenn. Code Ann. § 47-18-320(a). Moreover, the Health Club Act specifies that such a violation of the registration requirements of the Health Club Act, for the purpose of applying the Consumer Protection Act,

> . . . shall be construed to constitute an unfair or deceptive act or practice affecting the conduct of any trade or commerce and subject to the penalties and remedies as provided by that act.

Tenn. Code Ann. § 47-18-320(b) (2001). Thus, the Health Club Act clearly states that such a violation of the Health Club Act is also *per se* a violation of the Consumer Protection Act. It is undisputed, and the trial court noted, that the State may pursue remedies on behalf of consumers

under the Consumer Protection Act.[13]  The trial court held, however, that the State could not pursue remedies under the Health Club Act, only under the Consumer Protection Act.  This cannot be true, since a violation of the Health Club Act is *per se* a violation of the Consumer Protection Act.  Moreover, the State is empowered to obtain a broad range of remedies under the Consumer Protection Act,[14] which would include the remedies specified in the Health Club Act.  Therefore, this holding by the trial court must be reversed.

Our holding on this issue, however, does little to assist the State in this case.  As noted above, the State sought, and was granted, injunctive relief requiring Thompson to notify consumers of the alleged violation and that legal relief from their health club agreements might be available.  The "other" relief sought by the State, that is, restitution, required the State to show "ascertainable loss."  This would be the case under the Consumer Protection Act or under the Health Club Act via the Consumer Protection Act, as outlined above.  Thus, despite our holding that the State may pursue remedies on behalf of consumers under the Health Club Act, the State has not proffered evidence to support the award of any further relief.

The State next argues that the trial court erred in failing to grant it summary judgment on several issues.  The State asserts that it was entitled to a judgment as a matter of law regarding Thompson's failure to ascertain whether the Club was in compliance with the Health Club Act and Thompson's failure to notify the Division of Consumer Affairs of the change in ownership,[15] as well

---

[13]Section 47-18-108(a)(1) provides:

Whenever the division has reason to believe that any person has engaged in . . . any act declared unlawful by this part . . . the attorney general and reporter . . . may bring an action in the name of the state against such person to restrain by temporary restraining order, temporary injunction, or permanent injunction the use of such act or practice.

Tenn. Code Ann. § 47-18-108(a)(1) (2001).

[14]Section 47-18-108(b)(1) provides:

The court may make such orders or render such judgments as may be necessary to restore to any person who has suffered any ascertainable loss by reason of the use or employment of such unlawful method, act, or practice, any money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, which may have been acquired by means of any act or practice declared to be unlawful by this part.

Tenn. Code Ann. § 47-18-108(b)(1) (2001).  ***See also*** Tenn. Code Ann. § 47-18-112 quoted in footnote 11.

[15]Section 47-18-313 provides in part:

(a)  Any individual, firm, corporation, association, or other legal entity which obtains an ownership interest in a health club or its assets shall be responsible for determining that such health club is in compliance with the provisions of this part.

(b)  A health club shall provide written notice to the division by registered or certified mail within ten

(continued...)

as Thompson' failure to obtain a new certificate upon transfer of ownership pursuant to section 47-18-311(b)[16] of the Tennessee Code Annotated. It is undisputed that Thompson violated the Act by failing to have a valid certificate of registration for a three-month period. The errors alleged by the State on the additional issues would be harmless error; reversal of the trial court holding would not entitle the State to any additional relief. Therefore, we find this argument to be without merit.

The State also asserts that the trial judge erred in failing to grant summary judgment regarding violations of section 47-18-104(b)(12) of the Consumer Protection Act. The record indicates that this motion was denied because genuine issues of material fact remained. The issue went to trial, and the trial court granted Thompson's motion for directed verdict. Therefore, this argument is also without merit.

Finally, the State asserts that the trial court erred in awarding Thompson attorney's fees and costs under the Equal Access to Justice Act of 1984, sections 29-37-101 to -106 of the Tennessee Code Annotated. The Equal Access to Justice Act provides:

> (a) (1) Unless otherwise provided by law, the court having jurisdiction over the civil action brought by a state agency or over an action for judicial review brought pursuant to § 4-5-322, may award reasonable and actual fees and other expenses not to exceed ten thousand dollars ($10,000) to the prevailing party unless the prevailing party is a state agency.
>
> . . . .
>
> (b) (1) The court may make an award pursuant to the terms of this chapter only if the small business has demonstrated by a preponderance of the evidence that the actions of the state agency were not supported by substantial evidence or were arbitrary and capricious or were brought in bad faith for the purpose of harassment. The court may, in its discretion, decline to make an award if it finds that special circumstances exist that would make an award unjust. . . .

---

[15](...continued)
(10) days after any change in ownership or the sale of a health club or any of its locations. . . .

Tenn. Code Ann. § 47-18-313(a) and (b) (2001).

[16]Under section 47-18-311(b):

Upon a change in the information contained in the original application for a certificate of registration or in the most current application for renewal thereof, which reflects a change of ownership of more than forty-nine percent (49%) of a health club or any of its locations, a new certificate of registration shall be applied for and obtained prior to commencing or continuing business.

Tenn. Code Ann. § 47-18-311(b) (2001).

Tenn. Code Ann. § 29-37-104 (a) and (b) (2000). The State argues that the Thompson is not the prevailing party, that the State of Tennessee is not a "state agency" as defined by the Equal Access to Justice Act of 1984, and that the terms "substantial evidence" and "arbitrary and capricious" are inapplicable to the case at bar.

The State first asserts that Thompson is not the prevailing party because Thompson was assessed fines due to the period of nonregistration. As the trial court indicated, most of the litigation expense was incurred as a result of the State's dogged pursuit of restitution, which occurred after Thompson admitted that it did not have a valid certificate of registration for a three-month period. The State's pursuit of restitution continued despite the fact that not a single consumer who desired restitution was produced. We do not find under these circumstances that the trial court erred in holding that Thompson was the prevailing party.

The State next claims that the State of Tennessee is not a "state agency" as defined by the Equal Access to Justice Act of 1984. By statute, a "state agency" is defined as: "each state board, commission, committee, department, officer, or any other unit of state government authorized or required by any statute or constitutional provision to make rules or to determine contested cases." Tenn. Code Ann. § 4-5-102(2) (1998). The lawsuit against Thompson was pursued by the Attorney General at the behest of the Department of Commerce and Insurance. Thus, it falls within the Equal Access to Justice Act.

The State asserts further that the trial court erred in apparently concluding that the State's actions against Thompson were "arbitrary and capricious" and not supported by "substantial evidence." Under the circumstances of this case, we find no error in this conclusion. Therefore, the award of attorney's fees and costs to Thompson is affirmed.

The decision of the trial court is affirmed in part and reversed in part, as set forth above. Costs are taxed one-half to appellant, State of Tennessee, and one-half to the appellees, Travis Thompson, individually and doing business as Thompson Enterprises, LLC and Gold's Gym, and Thompson Enterprises, LLC, a Delaware Limited Liability Company, doing business as Gold's Gym, for which execution may issue, if necessary.

_____
HOLLY KIRBY LILLARD, JUDGE