IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE



**FILED**

**February 22, 2000**

**Cecil Crowson, Jr.
Appellate Court Clerk**

| | | |
|---|---|---|
| MICHAEL C. GLEAVES, | ) | FOR PUBLICATION |
| | ) | |
| Appellant, | ) | FILED: February 22, 2000 |
| | ) | |
| v. | ) | DAVIDSON COUNTY |
| | ) | |
| CHECKER CAB TRANSIT | ) | HON. HAMILTON V. GAYDEN, JR., |
| CORPORATION, INC., | ) | JUDGE |
| | ) | |
| Appellee. | ) | NO. M1997-00183-SC-R11-CV |

For Appellant:                          For Appellee:

WILLIAM D. LEADER, JR.                  STEVEN D. PARMAN
JULIE C. MURPHY                         MATTHEW A. BOYD
Nashville, TN                           Nashville, TN

OPINION

JUDGMENT OF THE COURT OF APPEALS REVERSED;
JUDGMENT OF THE TRIAL COURT REINSTATED.                    BIRCH, J.

We granted this appeal in order to determine whether § 6.72.210 of the Code of the Metropolitan Government of Nashville and Davidson County[1] (Metro. Code) and the required Taxicab Liability Insurance Agreement[2] (Agreement) impose liability upon Checker Cab Transit Corporation, Inc. (Checker) for injuries to a third party caused by the negligence of one of Checker's contract drivers who was "off-duty" at the time of the incident. Because we find that the ordinance and the Agreement impose liability on the

---

[1]A. All taxicab companies shall be required to file a liability insurance agreement with the taxicab and wrecker licensing board for each taxicab operated under their franchise. A copy of such agreement is on file, attached to Ordinance 81-530, codified in this section.

B. These agreements shall place the vehicles operated under their franchise in the taxicab company's complete possession and control, and the taxicab company shall assume complete liability for each and every vehicle for which it enters into this agreement.

[2]TAXICAB LIABILITY INSURANCE AGREEMENT

CHECKER CAB TRANSIT CORPORATION Taxicab Company, a CORPORATION, duly licenced by the Taxicab and Wrecker Licensing Board of the Metropolitan Government of Nashville and Davidson County, hereby acknowledges, by the signature below of an officer, partner, or the sole proprietor of the corporation, that the vehicle(s) described herein is (are) operated under the name, emblem, color, design and insignia of the above-named company and said company agrees to the following: MOSLEY. ROBERT J.

1. That the vehicle serial number, year, model, and trade name are: 1990 CHEVROLET CAPRICE 1G18N54E7A150305 and the same are operated with the permission of and under the control of the above-named company, partnership or sole proprietorship.

2. That these vehicles shall be insured either by liability insurance or indemnity bond with minimum limits of not less than twenty-five thousand dollars ($25,000) for bodily injury or death of any one (1) person in any one (1) accident and not less than fifty thousand dollars ($50,000) for bodily injury or death of any two (2) or more persons in any one (1) accident and not less than ten thousand dollars ($10,000) for property damage resulting from any one (1) accident, or the amount of insurance or bond as required by the State of Tennessee, whichever is greater.

3. That the above-named taxicab company, partnership or sole proprietorship shall assume complete liability for each vehicle being operated under its name, color, emblem, design and insignia and shall be liable for any personal injuries or property damage to third parties as the result of the negligent use of these vehicles.

taxicab company regardless of the status (on-duty/off-duty) of the driver, the decision of the Court of Appeals is reversed, and the judgment entered by the trial court is reinstated.

## II

On the day in question, the record shows that Robert J. Mosley (a driver for Checker) began work at about 5:30 a.m. and reported "off-duty" by radio at approximately 9:20 p.m. Shortly after reporting "off-duty," and while en route home, Mosley's high speed attracted the attention of City of Lakewood police officers. A high speed chase ensued. The chase ended at about 10:05 p.m. when Mosley collided with a vehicle operated by Michael C. Gleaves. Gleaves sustained serious injuries.

Gleaves filed a lawsuit against Checker, Mosley, the City of Lakewood, and a City of Lakewood police officer. He sought damages under the theories of negligent hiring and supervision, *respondeat superior*, § 317 of the Restatement (Second) of Torts, and under § 6.72.210 of the Metro. Code. Checker moved for summary judgment. The trial court granted summary judgment in favor of Checker on the common law claims but denied summary judgment to Checker on the issue of liability under the ordinance. Instead, the court granted, *sua sponte*, summary judgment in favor of Gleaves, ruling that § 6.72.210 imposed liability on Checker for Mosley's negligence. The question of Mosley's negligence was submitted to a jury, and it determined that Mosley was 70 percent at fault and the City of Lakewood was 30 percent at fault. Applying § 6.72.210, the trial court held Checker liable in accordance with the jury's apportionment of fault.

3

Checker appealed the trial court's ruling on the issue of liability under § 6.72.210, and Gleaves appealed the trial court's grant of summary judgment to the defendant on his common law claims. The Court of Appeals reversed the trial court's judgment against Checker and dismissed Gleaves's complaint but affirmed the trial court's judgment in all other aspects. The sole issue on appeal is whether § 6.72.210 imposes liability upon Checker for Mosley's negligence while "off-duty."[3]

The Metropolitan Council of Nashville and Davidson County (Metropolitan Council) closely regulates the taxicab business. In order to operate a taxicab service within Davidson County, a taxicab company must first obtain a certificate of public convenience and necessity from the taxicab licensing board. Metro. Gov't. of Nashville and Davidson Co., Tenn. Code ch. 6.72, § 6.72.020.[4] Mosley was operating his taxicab under the authority of a certificate of public convenience and necessity issued to Checker Cab Transportation Corporation, Inc.

The taxicab company must also "file a liability insurance agreement with the taxicab and wrecker licensing board for each

---

[3]The Court of Appeals precluded Gleaves from obtaining a new trial as to his common law claims under the rationale of Samuelson v. McMurtry, 962 S.W.2d 473 (Tenn. 1998). Based on Samuelson, the Court of Appeals reasoned that because Gleaves had not appealed the judgment against the City of Lakewood he was precluded from obtaining a new trial because the City of Lakewood "would be forced to expend resources defending itself again in a new trial and it would encounter the possibility that a jury would assess more damages to it." Because this issue was not addressed by either party at oral argument or in the briefs submitted to this Court, we shall not address it.

[4]No person shall operate or permit a taxicab or motor vehicle owned or controlled by him, and as defined in Section 6.72.010 as amended, upon the streets and roads of the metropolitan government area without having first obtained a certificate of public convenience and necessity from the taxicab licensing board.

4

taxicab operated under [its] franchise." Metro. Gov't. of Nashville and Davidson Co., Tenn. Code ch. 6.72, § 6.72.210(A). The liability insurance agreement places "the vehicles operated under [the company's] franchise in the taxicab company's complete possession and control" and the company must "assume complete liability for each and every vehicle for which it enters" the agreement. Id. at ch. 6.72, § 6.72.210(B). A liability insurance agreement between Checker and its operators makes Checker "complete[ly] liable for each vehicle being operated under its name, color, emblem, design and insignia," and Checker is liable "for any personal injuries or property damage to third parties as the result of the negligent use of these vehicles." Agreement, supra n.2. Mosley and Checker had entered into the above-described agreement, and it had been filed.

For the sake of clarity, it is helpful to describe the relationship between Checker and its drivers. Checker is essentially a dispatch service. Typically, a customer telephones Checker, requests a taxicab, and a dispatcher contacts a driver by radio and directs him or her to the customer. Checker owns none of the taxicabs which it dispatches. Instead, the owner of the vehicle is personally responsible for the vehicle's maintenance, not Checker. Moreover, Checker does not share directly in any of the fare income. The only financial obligation an owner has to Checker is payment of a weekly fee for the use of a meter, a radio, a top light, Checker's dispatch service, Checker's distinctive paint scheme, Checker's emblem, Checker's insignia, and the right to drive under Checker's certificate of public convenience and necessity.

The construction of the pertinent ordinances controls the resolution of this case. Gleaves essentially insists that § 6.72.210 imposes complete liability on Checker for the negligence of the driver of any vehicle for which Checker has filed a liability insurance agreement. This result is dictated, contends Gleaves, by the clear and unambiguous language of the ordinance. Checker, on the other hand, contends that a taxicab operates under a company's franchise only when it is actively seeking or transporting passengers and that the ordinance imposes liability only when a taxicab is operated under the taxicab company's franchise. Thus, according to Checker, no liability should be imposed upon Checker for a driver's negligence while "off-duty." As the Court of Appeals aptly noted, "[a] cursory review of the selected provisions [of the ordinances] could lead to either conclusion."

IV

"Construction of a statute is a question of law which we review *de novo*, with no presumption of correctness." Myint v. Allstate Ins. Co., 970 S.W.2d 920, 924 (Tenn. 1998). The rules of statutory interpretation are used when interpreting an ordinance. See Tennessee Mfg. Housing Ass'n. v. Metro. Gov't. of Nashville, 798 S.W.2d 254, 260 (Tenn. App. 1990); see also Carroll Blake Constr. Co. v. Boyle, 140 Tenn. 166, 181, 203 S.W. 945, 948 (1918).

A "basic rule of statutory construction is to ascertain and give effect to the intention and purpose of the legislature."

<u>Carson Creek Vacation Resorts, Inc. v. State Dep't. of Revenue</u>, 865 S.W.2d 1,2 (Tenn. 1993).  In determining legislative intent and purpose, a court must not "unduly restrict[] or expand[] a statute's coverage beyond its intended scope." <u>Worely v. Weigels, Inc.</u>, 919 S.W.2d 589, 593 (Tenn. 1996)(quoting <u>Owens v. State</u>, 908 S.W.2d 923, 926 (Tenn. 1995)).  Rather, a court ascertains a statute's purpose from the plain and ordinary meaning of its language, <u>see Westland West Community Ass'n. v. Knox County</u>, 948 S.W.2d 281, 283 (Tenn. 1997), "without forced or subtle construction that would limit or extend the meaning of the language." <u>Carson Creek Vacation Resorts, Inc.</u>, 865 S.W.2d at 2.

When, however, a statute is without contradiction or ambiguity, there is no need to force its interpretation or construction, and courts are not at liberty to depart from the words of the statute. <u>Hawks v. City of Westmoreland</u>, 960 S.W.2d 10, 16 (Tenn. 1997).  Moreover, if "the language contained within the four corners of a statute is plain, clear, and unambiguous, the duty of the courts is simple and obvious, 'to say sic lex scripta, and obey it.'" <u>Id.</u> (quoting <u>Miller v. Childress</u>, 21 Tenn. (2 Hum.) 320, 321-22 (1841)).  Therefore, "[i]f the words of a statute plainly mean one thing they cannot be given another meaning by judicial construction." <u>Henry v. White</u>, 194 Tenn. 192, 198, 250 S.W.2d 70,72 (1952).

Finally, it is not for the courts to alter or amend a statute. <u>See Town of Mount Carmel v. City of Kingsport</u>, 217 Tenn. 298, 306, 397 S.W.2d 379, 382 (1965); <u>see also Richardson v. Tennessee Bd. of Dentistry</u>, 913 S.W.2d 446, 453 (Tenn. 1995); <u>Manahan v. State</u>, 188 Tenn. 394, 397, 219 S.W.2d 900,901 (1949).

7

Moreover, a court must not question the "reasonableness of [a] statute or substitut[e] [its] own policy judgments for those of the legislature." BellSouth Telecomms., Inc. v. Greer, 972 S.W.2d 663, 673 (Tenn. Ct. App. 1997). Instead, courts must "presume that the legislature says in a statute what it means and means in a statute what it says there." Id. Accordingly, courts must construe a statute as it is written. See Jackson v. Jackson, 186 Tenn. 337, 342, 210 S.W.2d 332, 334 (1948).

V

The language of the ordinance is plain, clear, and unambiguous. It requires that all certified taxicab companies "assume complete liability" for each vehicle for which it enters into a liability insurance agreement. Metro. Gov't of Nashville and Davidson Co., Tenn. Code ch. 6.72, § 6.72.210(B) (1991) (emphasis added). The natural and ordinary meaning of complete[5] is "entire" or "total." Therefore, the ordinance requires that a taxicab company assume complete and total liability for every vehicle for which it files a liability insurance agreement. The ordinance does not distinguish between cases when a driver is "on-duty" and actively transporting or seeking passengers or "off-duty." To read the ordinance as distinguishing between "on-duty" and "off-duty" would improperly dilute the meaning of the language and unduly restrict the ordinance's intended scope.

Similarly, the liability insurance agreement does not limit a taxicab company's liability for the negligence of its

_____

[5]Webster's Third New International Dictionary of the English Language 465 (1971).

drivers. The agreement requires taxicab companies to "assume complete liability for each vehicle being operated under its name, color, emblem, design and insignia." Agreement, supra n.2. (emphasis added). Additionally, the agreement makes taxicab companies "liable for any personal injuries or property damage to third parties as the result of the negligent use of" the vehicles. Id. Reading the ordinance and the required liability insurance agreement *in pari materia*, it appears that the Metropolitan Council intended an expansive scope of liability for taxicab companies. Not only must these companies assume "complete liability" for each of their vehicles, but also they must assume liability for any personal injury or property damage negligently caused by their drivers.

Chapter 6.72 of the Metro. Code further suggests that the Metropolitan Council intended to impose an expanded scope of liability on taxicab companies. Under § 6.72.020 "[n]o person shall operate or permit a taxicab or motor vehicle owned or controlled by him . . . upon the streets and roads of the metropolitan government area without having first obtained a certificate of public convenience and necessity." Metro. Gov't. of Nashville and Davidson Co., Tenn. Code ch. 6.72, § 6.72.020 (1991). The requirement that a certificate be obtained before a taxicab can operate in the metropolitan area is not limited to when a driver is "on-duty," the taxicab is actually carrying fare-paying passengers, or when an "on-duty" driver is actively seeking fare-paying passengers. A certificate is required at all times. Furthermore, § 6.72.010 defines a taxicab as a "vehicle regularly engaged in the business of carrying passengers for hire." Metro. Gov't. of Nashville and Davidson Co., Tenn. Code ch. 6.72, § 6.72.010

(1991).[6]  The ordinance does not limit the definition of a taxicab to a vehicle which is seeking passengers or a vehicle that always carries passengers for hire.  Rather, a vehicle is a taxicab if it is "regularly engaged" in carrying passengers for hire, regardless of the vehicle's activities at a given moment.  As the Court of Appeals noted, "a vehicle 'regularly engaged in the business of carrying passengers for hire' is a 'taxicab' twenty-four hours per day, whether or not passengers are being carried or solicited."

Chapter 6.72 of the Metro. Code suggests, therefore, that the Metropolitan Council intended to regulate the taxicab industry at all times regardless of the activities of a taxicab at a given moment.  Read in light of the whole Chapter, we believe that the Metropolitan Council intended, under § 6.72.210, to make taxicab companies liable for the negligence of their drivers regardless of whether the driver is "on-duty" or "off-duty."

VI

When presented with a clear and unambiguous ordinance so that "there is no room for interpretation" this Court is "not at liberty to depart from the words of the [ordinance]."  Hawks, 960 S.W.2d at 16.  Both Metro. Code § 6.72.210 and the required Taxicab Liability Insurance Agreement clearly and unambiguously impose liability on a taxicab company for the negligent acts of its drivers regardless of whether the driver is "on-duty" or "off-duty," carrying passengers, actively searching for a passenger to

---

[6]"Taxicab" means a motor vehicle regularly engaged in the business of carrying passengers for hire, donation, gratuity or any other form of remuneration, having a seating capacity of less than ten persons and not operated on a fixed route.

carry, or otherwise. Therefore, we reverse the decision of the Court of Appeals and reinstate the trial court's decision. If the Metropolitan Council did not intend for the ordinance to create the extent of liability that we have found here today it is up to the Council, not this Court, to clarify the scope of liability under the ordinance. It is not for this Court to substitute its own "policy judgments for those of the legislature." BellSouth Telecomms., Inc. v. Greer, 972 S.W.2d at 673.

Costs of this appeal are taxed to Checker Cab Transit Corporation, Inc.

_____
ADOLPHO A. BIRCH, JR., Justice

CONCUR:

Anderson, C.J.
Drowota, Holder, Barker, JJ.