# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
August 21, 2012 Session

## THERESA A. KERBY v. MELINDA J. HAWS, MD, ET AL.

### Appeal from the Circuit Court for Davidson County
No. 10C3355      Barbara N. Haynes, Judge

### No. M2011-01943-COA-R3-CV - Filed December 20, 2012

A woman who suffered a series of persistent infections after surgery filed a malpractice complaint against the defendant surgeon.  Her complaint alleged that the infections were cause by a small metal object that the defendant had negligently left in her body during the surgery.  The plaintiff attached to her complaint the statutorily required certificate of good faith, which certified that she had consulted with an expert, who provided a signed statement confirming that he believed, on the basis of the medical records, that there was a good faith basis to maintain the action.  *See* Tenn. Code Ann. § 29-26-122.  After the object was discovered to be a surgical clip of a type that was designed to be retained by the patient's body, the defendant filed a motion for summary judgment, which the plaintiff did not oppose. The defendant surgeon subsequently filed a motion for sanctions against the plaintiff under Tenn. Code Ann. § 29-26-122 (d)(3), which gives the court the authority to punish violations related to the certificate of good faith. The trial court granted the motion, and awarded the defendant doctor over $22,000 in attorney fees.  We reverse.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Al H. Thomas, Memphis, Tennessee, for the appellant, Theresa A. Kerby.

Dixie W. Cooper, Kim J. Gruetzmacher, Nashville, Tennessee, for the appellees, Melinda J. Haws, MD, and The Plastic Surgery Center of Nashville, PLLC.

# OPINION

## I. A COMPLAINT FOR MALPRACTICE

On March 23, 2003, Plaintiff Theresa Kerby underwent abdominal surgery, described as a "panniculectomy procedure and repair of ventral hernia times two" and performed by the defendant, Melinda Haws, M.D. Three weeks after her surgery, Ms. Kerby presented to Dr. Haws' office with redness, cellulitus and edema of her abdomen and wound site. Fluid from the site was cultured in the lab, which revealed a Methicillin Resistant Staphylococcus Aureus (MRSA) infection.

Dr. Haws admitted Ms. Kerby to Baptist Hospital, where she remained under treatment for a week. Dr. Haws was not involved in Ms. Kerby's care after that. Over the following six years, however, Ms. Kerby was hospitalized five more times with symptoms related to recurring abdominal MRSA infections, including abdominal wall abscess, swelling, pain and fever.

The last of those five hospital admissions occurred on May 21, 2009. The day after admission, Ms. Kerby underwent drainage of an abdominal wall abscess and removal of mesh from a previous procedure, as well as placement of a PICC line for IV Vancomycin treatment. During the procedure, five surgical clips were placed in the patient's body to control bleeding.

On May 28, 2009, Ms. Kerby was discharged from the hospital to Richland Place Nursing Home, where she remained until June 24. During her admission to the nursing home, Ms. Kerby's wound dressing was removed, and a nurse observed a shiny piece of material in the center of her wound cavity. Two other nurses confirmed the observation. A staple remover was used to remove the one-half inch long metallic object. Ms. Kerby, a registered nurse, examined the object and described it as "a broken piece of a surgical instrument."

Ms. Kerby subsequently consulted with an attorney, Al Thomas. He sent out a Notice of Potential Claim for Medical Malpractice on May 26, 2010, in accordance with the requirements of Tenn. Code Ann. § 29-26-121(a). The notice explained that the potential claim was based on the surgical treatment Ms. Kerby received on March 24, 2003, and that "[o]n or about June 2, 2009, during wound vac dressing, a piece of a metal surgical instrument was found in her abdominal wound."

The notice stated that Mr. Thomas "would rather not sue anyone in this case who does not need to be sued." It invited potential defendants who believed they had a good defense

to "discuss it quickly with your insurance carrier and your legal counsel" and to communicate with Mr. Thomas before the lapse of the statute of limitations for filing suit.

Mr. Thomas also telephoned a physician with expertise in vascular surgery, Martin Evans, M.D. Mr. Thomas told Dr. Evans about Ms. Kerby's initial surgery and her subsequent MRSA infections, and he stated that while recovering from debridement of her abdominal cavity, a broken piece of surgical instrument was found in her wound cavity. Mr. Thomas asked Dr. Evans to review Ms. Kerby's case to determine whether or not that object caused her infections, and Dr. Evans agreed.

Mr. Thomas subsequently sent Dr. Evans Ms. Kerby's voluminous medical records for the years 2003 - 2009. After reviewing those records, Dr. Evans sent Mr. Thomas a letter on August 8, 2010. The letter stated that on the basis of the medical records Dr. Evans had reached an opinion about the cause of Ms. Kerby's MRSA infections "to a reasonable degree of medical certainty." His opinion was that Dr. Haws had violated the applicable standard of care by negligently failing to remove a broken piece of a surgical instrument from Ms. Kerby's abdomen during her 2003 surgery and that the object was the cause of the infections that Ms. Kerby had suffered. Dr. Evans did not personally inspect the object that was removed from Ms. Kerby's body.

On August 30, 2010, Mr. Thomas filed a malpractice complaint on behalf of Ms. Kerby in the Circuit Court of Davidson County. He attached to the complaint a Certificate of Good Faith, in accordance with the requirements of Tenn. Code Ann. § 29-26-122(a). The certificate stated that he had consulted with a competent expert who had provided a signed written statement that "on the basis of information available from the medical records concerning the care and treatment of the plaintiff for the incident or incidents involved there is a good faith basis to maintain the action . . ."

## II. SUMMARY JUDGMENT

Shortly after the complaint was filed, Dr. Haws' attorney wrote a letter to Mr. Thomas, asking for photographs of the object that had been removed from Ms. Kerby's wound cavity. She included the same request with a set of interrogatories that was filed on October 4, 2010. Mr. Thomas answered the interrogatories and furnished defendant's attorney with three photographs of the metal object that were removed from her wound cavity.

The attorney showed the photographs to Dr. Haws and to Thomas Naslund, M.D., who had been retained as the defendant's expert. Both doctors concluded that the object depicted was not a broken piece of a surgical instrument as was alleged, but rather a surgical clip that

is used to control bleeding. Dr. Haws filed a motion for summary judgment on February 11, 2011, accompanied by the affidavits of Dr. Haws and Dr. Naslund, and photographs of the object removed from Ms. Kerby's wound.

Both affidavits stated in substantially the same language that after review of the photos the affiants concluded that the metal object was not a retained foreign body, but rather a vascular clip that is used to maintain hemostasis in patients. Dr. Haws stated that she did not use surgical clips in her practice, but that she was familiar with them from her training and had learned that they are made to be retained by the body. Dr. Naslund stated that surgical clips are made of a material that does not pose a source of infection to patients. The doctors both stated that they had reviewed the CT scans taken of Ms. Kerby's abdomen between 2003 and May 21, 2009, and that the surgical clip was not visible in any of the films. They concluded that the clip was likely placed during Ms. Kerby's abdominal surgery on May 22, 2009, and that it was not the source of her recurrent MRSA infections.

After receiving the motion for summary judgment, Mr. Thomas spoke to his client and advised defendant's attorney that he would not oppose her motion. The court granted summary judgment to Dr. Haws and dismissed Ms. Kerby's complaint.

### III. A MOTION FOR SANCTIONS

The matter did not end there, however, for on May 19, 2011, Dr. Haws, through counsel, filed a motion for sanctions under Tenn. Code Ann. § 29-26-122 against Mr. Thomas. The memorandum accompanying the motion alleged that, upon information and belief, Mr. Thomas "failed to consult with or receive a signed written statement from a medical expert competent to testify under Tenn. Code Ann. § 29-26-115, prior to executing and serving Plaintiff's certificate of good faith."[1]

Dr. Haws asked the court to compel Mr. Thomas to provide the court with a copy of each expert's signed written statement that he relied upon in executing the certificate of good faith. Mr. Thomas filed a response to which he attached Dr. Evans' opinion letter of August 8, 2010. Obviously, then, the original allegation that he had failed to obtain a written statement from an expert before filing the certificate of good faith was shown to be false or incorrect.

---

[1]The memorandum also asserted that Ms. Kerby could not testify as an expert in this case, because as a registered nurse, she was not competent to testify about the standard of care applicable to a plastic surgeon like Dr. Haws or to provide causation testimony. These allegations went to the necessity of having an expert other than Ms. Kerby.

-4-

Dr. Haws then asserted, that under Tenn. Code Ann. § 29-26-122, Mr. Thomas had a duty to send Dr. Evans a picture of the metal piece found in Ms. Kerby's wound cavity so the expert could make an independent identification of it. The court took the matter under advisement, reviewed the record, and then filed an order on August 24, 2011, awarding Dr. Haws sanctions against Mr. Thomas and his law firm in the amount of the expenses that were incurred in the defense of Dr. Haws, $22,184. The order did not explain the court's reasoning, but merely stated that ". . . the Court finds Dr. Haws' Motion for Sanctions against Plaintiff's counsel for failure to comply with the statutory requirements of Tennessee Code Annotated § 29-26-122 is well taken and should be granted." This appeal followed.

## IV. THE STATUTORY REQUIREMENTS - TENNESSEE CODE ANNOTATED § 29-26-122

In 2008 and 2009, our legislature enacted amendments to the Medical Malpractice Act, which were designed to, among other things, discourage the filing of unmeritorious malpractice claims. The amendment at issue in this case was codified at Tenn. Code Ann. § 29-26-122. It requires malpractice plaintiffs to file a certificate of good faith simultaneously with the complaint.[2] The certificate must state that:

(a)(1) The plaintiff or plaintiff's counsel has consulted with one (1) or more experts who have provided a signed written statement confirming that upon information and belief they:

> (A) Are competent under § 29-26-115 to express an opinion or opinions in the case; and

> (B) Believe, based on the information available from the medical records concerning the care and treatment of the plaintiff for the incident or incidents at issue, that there is a good faith basis to maintain the action consistent with the requirements of § 29-26-115.[3]

The certificate of good faith requirement prevents a party from filing a complaint before consulting with an expert and obtaining a favorable opinion from that expert as to the merits of the proposed claim. One of the purposes of the certificate of good faith is to weed

---

[2]Under the 2008 Amendment, the certificate of good faith had to be filed within 90 days after the filing of the complaint. But in 2009, our legislature eliminated the 90 day window, and required that the certificate of good faith be filed at the same time as the complaint.

[3]Tenn. Code Ann. § 29-26-115 sets out the elements of a malpractice claim, declares that competent expert testimony is necessary to establish those elements, and describes the qualifications required of expert witnesses.

out frivolous lawsuits before any party incurs substantial litigation expenses. *Jenkins v. Marvel*, 683 F. Supp.2d 626, 639 (E.D. Tenn. 2010). The filing of a certificate of good faith indicating that an expert has reviewed the claims and has certified that they are taken in good faith "satisfies the goal of attempting to ensure that suits proceeding through litigation have some merit." *Id*.

The consequences of failing to file a timely certificate of good faith are set out in Tenn. Code Ann. § 29-26-122(c) and (d). Subsection (c) provides that "[t]he failure of a plaintiff to file a certificate of good faith in compliance with this section shall, upon motion, make the action subject to dismissal with prejudice."

Subsection (d) creates additional consequences. It begins by shielding the exact details of the opinion relied upon by the plaintiff from discovery by the defendant: ". . . the written statement of an expert relied upon in executing the certificate of good faith is not discoverable in the course of litigation." Tenn. Code Ann. § 29-26-122(d)(1). But, it then goes on to establish an exception to that shield, in order to give the court the tools needed to determine whether the certificate of good faith was itself executed in good faith, and to punish the certifying attorney if it was not:

> (2) If a party in a health care liability action subject to this section prevails on the basis of the failure of an opposing party to offer any competent expert testimony as required by § 29-26-115, the court may, upon motion, compel the opposing party or party's counsel to provide to the court a copy of each such expert's signed written statement relied upon in executing the certificate of good faith. The medical experts may be compelled to provide testimony under oath, as determined by the court, for the purposes of determining that party's compliance with subsection (a) or (b).

> (3) If the court, after hearing, determines that this section has been violated, the court shall award appropriate sanctions against the attorney if the attorney was a signatory to the action and against the party if the party was proceeding pro se. The sanctions may include, but are not limited to, payment of some or all of the attorney's fees and costs incurred by a party in defending or responding to a claim or defense supported by the non-complying certificate of good faith.

Tenn. Code Ann. § 29-26-122(d).

Obviously, sanctions are authorized only where "this section has been violated." The referenced section requires the plaintiff's attorney to certify that (1) he or she has consulted

with an expert, (2) the expert has provided a written statement confirming he or she is competent to express an opinion in the case, and (3) the expert's written statement includes the expert's belief, "based on the information available from the medical records concerning the care and treatment of the plaintiff for the incident or incidents at issue," that there is a good faith basis to maintain the action consistent with statutory requirements.

Mr. Thomas provided a good faith certificate that matched these requirements. The attorney's responsibility is to certify specific things, and that is what he did. The expert's written statement includes the required information. The fact that the medical expert's opinion may ultimately not be accepted is not a basis for concluding that the attorney violated the certificate of good faith statute.

Dr. Haws complains that Dr. Evans relied on an express (and incorrect) assumption made by Mr. Thomas when he asked the expert to review Ms. Kerby's case to determine whether or not her MRSA infections were caused by the broken piece of surgical instrument found in her wound cavity. There is nothing in the record to indicate that the expert relied on anything other than what he said he relied on - Ms. Kerby's medical records. Those records, in fact, stated that a broken piece of surgical instrument had been found in Ms. Kerby's abdomen. Mr. Thomas, who is not a medical expert, had no reason to disbelieve the contents of the records.

Dr. Haws contends that because Mr. Thomas had the disputed object in his possession, he had a duty to at least send a picture of it to Dr. Evans. We can find nothing in Tenn. Code Ann. § 29-26-122 that precludes the plaintiff's expert from receiving information from other sources to supplement his understanding of the medical records. In fact, another section of the statute specifically authorizes the proposed expert to acquire facts outside the medical records when he deems the medical records to be inadequate for ascertaining the merits of the plaintiff's claim. *See* Tenn. Code Ann. § 29-26-122(a)(2)(B). But the record does not reflect that Dr. Evans ever asked for additional information or to see the object. Again, it is not within an attorney's expertise to guess what a medical expert might need to see, other than the medical records.

Conversely, there is also nothing in the statute that obligates the proposed expert witness to look behind the medical records to obtain a fuller understanding of the merits of the malpractice complaint, unless he considers such investigation to be necessary for him to reach an informed opinion. There is no suggestion in the record that Mr. Thomas knew, or even suspected, that the metal object was not what the medical professionals believed it to be. Since the lawyer was not a medical professional, he had no reason to go behind the medical records.

Dr. Haws also asserts, however, that the certificate of good faith was non-complying because Dr. Evans' opinion was based in part on Ms. Kerby's identification of the object found in her wound cavity as "a piece of a broken surgical instrument," rather than any observation of the object itself by Dr. Evans or by some other expert competent to testify under Tenn. Code Ann. § 26-26-115. Tennessee Code Annotated § 29-26-122(a)(1)(B) requires that the expert upon whose opinion the plaintiff or the plaintiff's counsel relies for the certificate of good faith base that opinion on "the information available from the medical records concerning the care and treatment of the plaintiff for the incident or incidents at issue." It is undisputed that the medical records Dr. Evans examined included the following note:

> 6/2/2009 ... wound vac dressing was removed and it was noted by 1 nurse and then confirmed by 2 others that a shiny piece of material was visualized in center of wound cavity . . . . After removal . . . [m]etal visualized through . . . a magnifying glass and appeared to be the tip of a 'scissorlike' instrument. Patient alert [and] aware of situation and was allowed to visualize metal piece . . ."

First, it was not Ms. Kerby who wrote the notation that was in the record. Although registered nurses may not qualify as an expert in some malpractice cases, medical records typically include the observations of nurses and other health professionals who are not competent to serve as expert witnesses in cases involving their patients. Yet the language of Tenn. Code Ann. § 29-26-122(a)(1)(B) does not distinguish between the different parts of the medical records that a prospective expert witness may rely upon to reach his opinion, but only requires that the records consulted concern "the care and treatment of the plaintiff for the incident or incidents at issue."

The filing of a certificate of good faith with a malpractice complaint is not a guarantee that a claim will ultimately prove to be meritorious. It is rather a necessary requirement that must be satisfied before the claim can proceed further. The objections Dr. Haws raises as support for sanctions are the type of issues that would normally be explored and resolved as the case moved forward. While some may then have been decided in Dr. Haws' favor, they do not constitute grounds for sanctions for violation of the requirements of the certificate of good faith statute. We note that the required pre-filing notice was given herein, but there is no evidence in the record of any contact that was made to obtain further information which might have led Ms. Kerby's attorney to refrain from filing the complaint.

In sum, Dr. Haws would have us extend the scope of Tenn. Code Ann. § 29-26-122 beyond the parameters established by the plain language of the statute. The construction of a statute is a question of law which we also review *de novo* without any presumption of

correctness. *Gleaves v. Checker Cab Transit Corp., Inc.*, 15 S.W.3d 799, 802 (Tenn. 2000); *Myint v. Allstate Insurance Co.*, 970 S.W.2d at 924. The most basic rule of statutory construction is to ascertain and give effect to the intention and purpose of the legislature. *In re Angela E.*, 303 S.W.3d at 246; *State v. Wilson*, 132 S.W.3d 340, 341 (Tenn. 2004); *Mooney v. Sneed*, 30 S.W.3d 304, 306 (Tenn. 2000); *Gleaves v. Checker Cab Transit Corp., Inc.*, 15 S.W.3d at 802 (Tenn. 2000).

The court must ascertain the legislative intent without unduly restricting or expanding the statute's coverage beyond its intended scope. *State v. Sliger,* 846 S.W.2d 262, 263 (Tenn. 1993). *See also Gleaves*, 15 S.W.3d at 802; *Worley v. Weigels, Inc.*, 919 S.W.2d 589, 593 (Tenn. 1996); *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995). The legislative intent and purpose are to be ascertained primarily from the natural and ordinary meaning of the statutory language, without a forced or subtle interpretation that would limit or extend the statute's application. *State v. Blackstock*, 19 S.W.3d 200, 210 (Tenn. 2000) (citing *State v. Pettus*, 986 S.W.2d 540, 544 (Tenn. 1999)).

We hold that the certificate of good faith filed by Mr. Thomas was compliant with Tenn. Code Ann. § 29-26-122 and did not violate that section. Accordingly, we vacate the sanctions imposed on him by the trial court.[4]

## V. CONCLUSION

The judgment of the trial court is reversed, and the sanctions awarded are vacated. We remand this case to the Circuit Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellees, Melinda J. Haws, M.D., and The Plastic Surgery Center of Nashville, PLLC.

_____
PATRICIA J. COTTRELL, JUDGE

---

[4]Dr. Haws makes another argument based upon a comparison to the "inquiry reasonable under the circumstances" language in Tenn. R. Civ. P. 11. However, Dr. Haws made no mention of Rule 11 in her motion for sanctions or in her memorandum in support of that motion, and the trial court did not mention Rule 11 in its order imposing sanctions. It does not appear that the notice required by Rule 11 was given. Finally, the more specific requirements of Tenn. Code Ann. § 29-26-122 apply. We also point out that counsel for Dr. Haws filed a motion alleging that Mr. Thomas had not obtained an expert's written statement before filing the complaint. It is unclear what inquiry had been made to support that allegation, but it was not accurate.