# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### January 20, 2016 Session

## CITY OF JACKSON v. BARRY WALKER

**Direct Appeal from the Circuit Court for Madison County**
**No. C-14291     Roy B. Morgan, Jr., Judge**

_____

**No. W2015-00621-COA-R3-CV – Filed February 2, 2016**

_____

This appeal involves an allegedly unsafe building in the City of Jackson.  After a hearing, the City of Jackson's environmental court ordered the property owner to demolish the building.  The property owner appealed to circuit court.  After another hearing, the circuit court declared the property a public nuisance and also ordered it demolished.  The property owner appeals.  He argues that the City of Jackson failed to follow the correct procedures under the city code, and therefore, he should not be required to demolish the structure.  Discerning no merit in this assertion, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which KENNY ARMSTRONG, J., and JOHN EVERETT WILLIAMS, SP. J., joined.

Joshua Brian Dougan, Jackson, Tennessee, for the appellant, Barry Walker.

Lewis Latane Cobb, Jackson, Tennessee, for the appellee, City of Jackson, Tennessee.

## OPINION

### I. FACTS & PROCEDURAL HISTORY

This litigation involves property located at 444 North Royal Street in Jackson, Tennessee.  The structure on the property was originally constructed in 1898.  It consists of a small brick building, roughly sixteen feet high, located just one to two feet from the current sidewalk.  The property was purchased by Barry Walker around 2003. Around the beginning of 2010, a semi-truck from a neighboring business drove into the structure and caused the partial collapse of a wall.  After the damage to the wall, the roof, doors, and windows were also removed from the building.

On January 4, 2010, Walker received a letter, entitled "Complaint," from the Building and Codes Department of the City of Jackson. The letter stated,

> Pursuant to the provisions of the Unsafe Building Abatement Code of the City of Jackson and T.C.A. 13-21-101 Et. Seq., this is to give notice that a petition has been filed with the City of Jackson Building & Housing Codes Department charging that the dwelling or structure(s) located at the above address is unfit for human occupation or use based upon one or more of the following reasons:
>
> X  1. The dwelling or structure is dilapidated and in substantial disrepair.
> X  2. The dwelling or property has substantial structural defects which are dangerous or injurious to the health, safety and morals of the occupants and users of neighboring structures and/or residents of the City of Jackson.
> . . .
> X  4. The dwelling or structures contain defective conditions that increase the hazards of fire, accident or other calamities.
> X  5. Conditions exist in the dwelling or structures which render it unsafe, unsanitary, dangerous or detrimental to the health, safety and morals of the occupants, or users of neighboring structures or other residents of the City of Jackson.
> X  6. The building is in such a condition as to constitute a public nuisance.

The letter notified Walker that a hearing would be held before a building official at the building department on January 26, 2010, to determine if the structure was unfit for human occupation or use. The letter also informed Walker that he could be required to repair or demolish the structure if it was determined to be unfit. The letter advised Walker that he could file a written answer and also appear and respond at the hearing.

Prior to the scheduled hearing, however, Walker contacted the building department and expressed his intention to begin repairs on the property. He submitted permit applications and sketches. As a result, the scheduled hearing at the building department never took place. City building officials had regular contact with Walker over the next several years regarding his progress with the construction. However, according to the coordinator of the Department of Housing Codes, the progress would "just start, stop, start, stop." Four years later, the building was still without a roof, doors, or windows.

On or about September 26, 2014, Walker was served with a misdemeanor summons to the City of Jackson's environmental court. The summons alleged that Walker was in violation of section 12-905 of the City's "Unsafe Building Abatement

2

Code." In particular, the summons alleged that Walker's property had been in a deteriorating condition for several years, that construction had started and stopped on several occasions, and that it remained unfinished and constituted a hazard. The summons required Walker to appear before the judge of the environmental court for a hearing.

The environmental court held a hearing and ordered Walker to demolish the property within thirty days. Walker appealed to circuit court. The circuit court held a hearing on February 12, 2015, and heard testimony from six witnesses. On March 4, 2015, the circuit court entered an order finding that "the Property is a public nuisance, and the freestanding walls on the Property pose a clear and present danger to the neighborhood and surrounding properties because they are not structurally sound."[1] The circuit court ordered Walker to demolish the structure within sixty days. Walker timely filed a notice of appeal.

## II. ISSUE PRESENTED

On appeal, Walker argues that the City of Jackson failed to follow the correct procedures under the city code, and therefore, he should not be required to demolish the building. For the following reasons, we affirm the decision of the circuit court and remand for further proceedings.

## III. STANDARD OF REVIEW

Interpreting statutes, procedural rules, and local ordinances involves questions of law, which appellate courts review de novo without a presumption of correctness. *Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 414 (Tenn. 2013) (citing *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011); *Gleaves v. Checker Cab Transit Corp.*, 15 S.W.3d 799, 802 (Tenn. 2000)).

## IV. DISCUSSION

Essentially, Walker argues that the City of Jackson failed to follow appropriate procedures in this case because the City sent him a complaint letter pursuant to the Unsafe Building Abatement Code in 2010, but the City never completed the hearing process and other procedures provided in the Unsafe Building Abatement Code. Instead, the City summoned him to environmental court in 2014, and the property was ultimately declared a public nuisance. These arguments require us to examine the City of Jackson's

---

[1]As noted, the summons to environmental court alleged that Walker was in violation of section 12-905 of the Unsafe Building Abatement Code. That section lists eleven conditions that render a building unsafe. One of those conditions is: "The building is in such a condition as to constitute a public nuisance."

Unsafe Building Abatement Code, the enabling legislation found at Tennessee Code Annotated section 13-21-101, et seq., and the private act and city code sections establishing the City's environmental court.

### A.     The City's Unsafe Building Abatement Code

Chapter 12-9 of the City of Jackson's city code is entitled "Unsafe Building Abatement Code."  At the outset, it states that it is adopted pursuant to the authority granted by Tennessee Code Annotated section 13-21-101, et seq.  City of Jackson Municipal Code § 12-901. The Unsafe Building Abatement Code provides that the person responsible for its enforcement is the director of the department of building and housing codes or his authorized agent.  *Id.* at § 12-902, -903.  The director is authorized to investigate and inspect the condition of buildings in the city.  *Id.* at § 12-904.  If he determines a building to be unsafe, he is directed to serve a certified letter of complaint on the owner with notice of a time and date for a hearing before the director.  *Id.* at § 12-906.  The owner is given the opportunity to respond and appear at the hearing. *Id.* at § 12-907.  If after the hearing the director determines the building to be unsafe, he provides written findings to the owner and a certified letter of condemnation containing an order to repair or demolish the structure.  *Id.* at § 12-908.  After an administrative appeal process, judicial review is available in chancery court.  *Id.* at § 12-911.

The City admits that it did not follow this process in Walker's case.  After serving Walker with a letter of complaint, the City apparently cancelled the scheduled hearing because Walker promised to repair the property.  The issue, then, is whether the City was required to complete the hearing process under the Unsafe Building Abatement Code, or whether it was permitted to proceed in environmental court instead.  This question can be answered by examining the enabling legislation referenced above.

### B.     Tennessee's Slum Clearance & Redevelopment Act

Tennessee Code Annotated section 13-21-101, et seq., is known as Tennessee's Slum Clearance and Redevelopment Act.  *See, e.g.*, *Metro. Gov't of Nashville v. Brown*, No. M2008-02495-COA-R3-CV, 2009 WL 5178418, at *3 (Tenn. Ct. App. Dec. 30, 2009); *Smith v. City of Knoxville, Code Enf't*, No. 03A01-9609-CH-00287, 1997 WL 39541, at *1 (Tenn. Ct. App. Feb. 3, 1997).  The Act confers upon municipalities the power "to exercise its police powers to repair, close or demolish" structures that are unfit for human occupation or use.  Tenn. Code Ann. § 13-21-102(a).  It authorizes municipalities to adopt ordinances relating to the structures within the municipality that are unfit for human occupation or use.  Tenn. Code Ann. § 13-21-103.  The municipality is directed to designate or appoint a public officer to exercise the powers prescribed by the ordinances.  Tenn. Code Ann. § 13-21-103(1).  The Act provides that the designated

public officer can serve complaints, hold hearings, and determine structures to be unfit for human occupation and use, like the process set forth in the City of Jackson's Unsafe Building Abatement Code. Tenn. Code Ann. § 13-21-103(2), (3).

By passing the Slum Clearance and Redevelopment Act, "the legislature provided a method for municipalities to order the demolition of a building found unfit for human habitation." *Manning v. City of Lebanon*, 124 S.W.3d 562, 565 (Tenn. Ct. App. 2003) (citing *Winters v. Sawyer*, 225 Tenn. 113, 463 S.W.2d 705 (1971)). However, we have rejected the notion that the Act provides "the exclusive or the only method that municipalities could use" to accomplish that end. *Id.* This is because the Slum Clearance and Redevelopment Act expressly states:

> Nothing in this part shall be construed to abrogate or impair the powers of the courts or of any department of any municipality to enforce any provisions of its charter or its ordinances or regulations, nor to prevent or punish violations thereof, and the powers conferred by this part shall be in addition and supplemental to the powers conferred by any other law.

Tenn. Code Ann. § 13-21-109. The Act also states:

> Nothing in this section shall be construed to impair or limit in any way the power of the municipality to define and declare nuisances and to cause their removal or abatement, by summary proceedings or otherwise.

Tenn. Code Ann. § 13-21-103(6). Accordingly, the Act makes it "clear that the legislature intended to empower municipalities with *a* method for clearing unsafe buildings, but the legislature explicitly acknowledged that other valid procedures could" also exist. *Manning*, 124 S.W.3d at 565 (emphasis in original).

### C.    The City of Jackson's Environmental Court

In 2008, the Tennessee General Assembly passed a private act authorizing the City of Jackson to establish an environmental court. 2008 Tenn. Priv. Acts, c. 73. The judge of the environmental court was granted the power "to order any defendant found guilty of violating *any* city ordinance or state statute related to health, animal control, housing, fire, land subdivision, land use, *building* or zoning, to correct such violation at the defendant's own expense." *Id.* at § 2 (emphasis added). In accordance with this authorization, the city code was amended to authorize the environmental court "to hear

and decide cases involving alleged violations of city environmental ordinances." City of Jackson Municipal Code § 13-401. The city code specifically authorizes the environmental judge to order *any* defendant found guilty of violating *any* ordinance relating to "health, housing, . . . building or zoning" to correct the violation at the defendant's own expense. § 13-402.

Considering these relevant authorities, we conclude that the City did not act impermissibly when it chose to summon Walker to environmental court rather than pursuing further proceedings before the director of the department of building and housing codes. The City's Unsafe Building Abatement Act, adopted pursuant to the Slum Clearance and Redevelopment Act, provided the City with one method for clearing unsafe buildings, *Manning*, 124 S.W.3d at 565, but it was not the exclusive avenue available to the City. It did not impair the power of the environmental court to enforce the City's environmental ordinances or to define and declare nuisances. *See* Tenn. Code Ann. § 13-21-109, -103(6). Rather, the powers conferred pursuant to the Unsafe Building Abatement Code were "in addition and supplemental to the powers conferred" upon the environmental court. Tenn. Code Ann. § 13-21-109.

## V. CONCLUSION

For the aforementioned reasons, the decision of the circuit court is hereby affirmed and remanded for further proceedings. Costs of this appeal are taxed to the appellant, Barry Walker, and his surety, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE

6