IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 16, 2004 Session

**RICK WATKINS and ELLEN WATKINS, Individually and f/u/b
HOW INSURANCE COMPANY, in Receivership
v.
TANKERSLEY CONSTRUCTION, INC., O'NEAL TANKERSLEY,
Individually and d/b/a TANKERSLEY CONSTRUCTION,
CHARLES WALKER ENTERPRISES, CHARLES WALKER,
Individually and d/b/a CHARLES WALKER ENTERPRISES, and
MUNFORD DEVELOPMENT COMPANY**

An Appeal from the Circuit Court for Tipton County
No. 5245    Joseph H. Walker, III, Judge

_____

**No. W2004-00869-COA-R3-CV - Filed June 29, 2005**

_____

This is a negligent construction case involving a statute of repose. The defendant developer bought the residential lot in question in 1992. The developer hired the defendant subcontractor to remove trees and perform the grading work necessary to make the lot suitable for the construction of a house. In 1993, the developer sold the lot to the defendant construction company, which constructed a house on the lot. In 1994, the construction company sold the lot and the house to purchasers not party to this litigation. In 1997, the purchasers sold the house to the plaintiffs in this case. A few weeks after the plaintiffs moved into the house, they noticed cracks in the walls and abnormal settling of the house. In April 2000, the plaintiffs filed this lawsuit against the construction company and the subcontractor for negligent construction of the house and negligent grading of the lot. The defendants filed motions for summary judgment based on the four-year statute of repose set out in T.C.A. § 28-3-202. The trial court granted summary judgment in favor of the defendants based on that statute. The plaintiffs now appeal the trial court's grant of summary judgment only as to the defendant subcontractor. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J.,W.S., and ALAN E. HIGHERS, J., joined.

Loys A. "Trey" Jordan, III, and Lisa A. Overall, Memphis, Tennessee, for the appellants, Rick Watkins and Ellen Watkins, Individually and f/u/b How Insurance Company, in Receivership.

Pam Warnock Green, Memphis, Tennessee, for the appellees, Charles Walker Enterprises, Charles Walker, Individually and d/b/a Charles Walker Enterprises.

**OPINION**

This case involves the issue of whether the remedy for the wrong committed has been legislatively precluded. The chronology of events and relevant facts are undisputed. In the fall of 1992, Munford Development Company ("Munford"), a corporation, purchased the residential lot at issue in Munford, Tennessee. Defendant/Appellee Charles Walker ("Walker") was a shareholder and the president of Munford at the time.[1] Defendant/Appellee Charles Walker Enterprises ("Walker Enterprises") is a sole proprietorship owned by Walker. Walker Enterprises performs bulldozer and elevation work for construction job sites. Munford paid Walker Enterprises to do dozer and elevation work on the residential lot, and to fill the land to make it suitable as a building site for a house. Neither Walker, individually, nor Walker Enterprises ever had any ownership interest in the lot or the development. On November 5, 1993, Munford sold the lot at issue to Tankersley Construction, Inc. ("Tankersley Construction"). Tankersley Construction built a house on the lot that became 130 Kilkenny Drive. The house was substantially completed by March 1994.

On March 25, 1994, Tankersley sold the lot and house to John and Mary Woods (collectively, "the Woods"). On February 3, 1997, the Woods sold the lot and house to Plaintiffs/Appellants Rick and Ellen Watkins (collectively, "the Watkins").[2] The Watkins moved into the house shortly thereafter.

On April 12, 1997, only weeks after they moved into the house, the Watkins discovered structural damage to the house resulting from abnormal settlement. The walls of the house had significant cracks, which caused leaks and other serious problems. The Watkins began to try to determine the cause of the structural damage to their home. Finally, they obtained an inspection of the lot on which the house was built. They found that, when the lot was filled and graded in preparation for the construction, biodegradable materials such as tree stumps and roots were used as fill. When this matter began to decay, the house settled unevenly, resulting in the structural damage.

On April 3, 2000, the Watkins filed the instant lawsuit against Munford, Tankersley Construction, O'Neal Tankersley, individually and d/b/a Tankersley Construction, Walker Enterprises, and Walker, individually and d/b/a Walker Enterprises, for their negligence in the

---

[1]Walker and his wife owned 100% of the stock in Munford.

[2]The Watkins paid $140,000 for the house and lot.

-2-

development of the property and the improper grading and filling of the building site.[3]  The Watkins asserted in their complaint that, in the filling of the site, the soil impaction was improper, and that the site was filled with biodegradable materials that had decayed over time.  When the fill material decayed, the complaint alleged, the house on the site began to settle at an abnormal rate.  Mrs. Watkins later filed an affidavit describing the manifestations of the accelerated settlement of the house.  In the affidavit, she said that cracks began to appear all over the home, with new cracks appearing "[e]ach and every day," and with the house audibly "cracking as it settles."  She stated that the abnormal settling of her home had resulted in significant leaks throughout the home, and necessitated the rebuilding of the front porch, the replacing of supports, and other remedial measures.  In the affidavit, Mrs. Watkins asserted that the damage to the house was caused by the instability of the lot, and that the house is now unmarketable due to that instability.

All parties filed motions for summary judgment.  The defendants argued that the Watkins' lawsuit was barred by the four-year statute of repose found in Tennessee Code Annotated § 28-3-202:

> **Limitation of actions.**– All actions to recover damages for any deficiency in the design, planning, supervision, observation of construction, or construction of an improvement to real property, for injury to property, real or personal, arising out of any such deficiency, or for injury to the person or for wrongful death arising out of any such deficiency, shall be brought against any person performing or furnishing the design, planning, supervision, observation of construction, construction of, or land surveying in connection with, such an improvement within four (4) years after substantial completion of such an improvement.

Tenn. Code Ann. § 28-3-202 (2000).  The language in the statute says that it applies to all actions involving defects "in the design, planning, supervision, observation of construction, or *construction of an improvement to real property*."  In addition, the four-year time limitation begins to accrue "after substantial completion of such an improvement." ***Id.***

On December 22, 2003, the trial court held a hearing on defendant Munford's motion for summary judgment.  On December 30, 2003, the trial court entered an order granting summary judgment to Munford based on the four-year time limitation set out in Section 28-3-202.  On March 1, 2004, the trial court held a hearing on the motions for summary judgment filed by the Watkins, Tankersley/Tankersley Construction, and Charles Walker/Walker Enterprises (collectively, "Walker defendants").  At the conclusion of the hearing, the trial court entered an order granting summary judgment in favor of Tankersley/Tankersley Construction and the Walker defendants, also based on the four-year statute of repose.  The trial court found that the statute of repose was applicable to an action such as this, in which damages are sought for deficiencies in an improvement to real property caused by soil instability.  The trial court reasoned that, because the house was substantially

---

[3]How Insurance Company, in receivership, provided homeowners' insurance to the Watkins for the residence. It was included as a plaintiff to protect its right of subrogation in the event of a recovery in the lawsuit.

completed in March 1994, and the complaint was filed over six years later in April 2000, the lawsuit was untimely under the statute's four-year time limitation. The Watkins now appeal, challenging only the grant of summary judgment in favor of the Walker defendants.

On appeal, the Watkins argue that the trial court erred in ruling as a matter of law that the grading and filling of their property constituted the "construction of an improvement to real property," thus subjecting their cause of action to the four-year time limitation in Section 28-3-202. They concede that, if the grading work performed by the Walker defendants constitutes the construction of an improvement to real property, then their suit is time barred. Therefore, the sole issue in this appeal is whether the trial court erred in finding that the Walker defendants' actions constituted the construction of an improvement to real property, and the resulting conclusion that Section 28-3-202 governs the Watkins' claims.[4]

We review the trial court's grant of summary judgment *de novo* with no presumption of correctness. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. This case presents an issue of statutory interpretation, which is also reviewed *de novo*. *Honsa v. Tombigbee Transp. Corp.*, 141 S.W.3d 540, 542 (Tenn. 2004). In construing a statute, we must "ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Id.* (quoting *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002) (quoting *Owens v. State*, 908 S.W.2d 923, 926 (Tenn.1995))). Legislative intent can be determined "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." *Id.* (quoting *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn.2000)). Where the language is clear and unambiguous, we must apply the statute as written. *Id.*; *see also Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 83 (Tenn. 2001).

The trial court cited several cases in support of its decision that the grading, filling, and preparation of a site for construction is the "construction of an improvement to real property" within the meaning of Section 28-3-202. The trial court noted *Lonning v. Jim Walter Homes, Inc.*, 725 S.W.2d 682 (Tenn. Ct. App. 1986), in which the plaintiffs sued the builder for fraudulently concealing the fact that the soil in the lot on which their house was to be built would not "percolate."[5] The *Lonning* court held that the plaintiffs' lawsuit resulted from the construction of an improvement to real property and, therefore, the time limitation in Section 28-3-202 was applicable. *Lonning*, 725 S.W.2d at 685. The trial court below also relied on *Williams v. Thompson*, 443 S.W.2d 447 (Tenn. 1969), in which the Tennessee Supreme Court held that an action for damages to residential property, including damages for the settling of the foundation and

---

[4]In the trial court below, the Watkins maintained no allegations of fraud.

[5]"Percolation" is the process by which sewage is disseminated into the soil. *Lonning*, 725 S.W.2d at 683 n.1.

-4-

sinking of the house into the ground, was governed by the three-year statute of limitations applicable to actions for injuries to real property, rather than by the six-year statute of limitations governing contracts. The *Williams* court held that determining the applicable statute of limitations depended on the "subject matter of the controversy" and not on the remedial procedure. *Williams*, 443 S.W.2d at 449.

The trial court also cited *Memphis Light Gas & Water v. T.L. James & Co.*, No. 52, 1986 WL 11588 (Tenn. Ct. App. Oct. 17, 1986) ("*MLG&W*"). In that case, the Tennessee Department of Transportation hired a contractor to construct a segment of an interstate highway. A provision in the contract required the contractor to obtain material for the construction of the roadbed from specified "borrow pits." Borrow pit No. 6 was designated as the source for a particular segment of the road bed. The contractor hired a subcontractor to dredge the borrow pits. After this dredging was completed, the subcontractor was no longer involved with the project. The project was completed in April 1978. At that time, borrow pit No. 6 was serving as a reservoir to retain surface water drained to surrounding areas. *MLG&W*, 1986 WL 11588, at *1. In December 1982, the Memphis utility company, Memphis Light, Gas & Water ("MLG&W"), discovered that a water main had collapsed and separated in the vicinity of borrow pit No. 6. In July 1984, MLG&W filed suit against the contractor and the subcontractor, alleging that negligence in the dredging resulted in damages to the water main. *Id.* at *1.

In *MLG&W*, both the contractor and the subcontractor filed motions for summary judgment based on the four-year statute of repose in Section 28-3-202. MLG&W challenged the motions, arguing that dredging in borrow pit No. 6 was not "an improvement to real property" within the meaning of the statute. The trial court held that, because the excavation of the borrow pit was a *part of* improvement to real property, it "was therefore itself an improvement to real property within the meaning of Sec. 28-3-202 . . . ." *Id.* at *2. The appellate court agreed and determined that the term "improvement" should be given its usual and ordinary meaning. The court defined the term as follows:

> *Improvement.* A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or *utility or to adapt it for new or further purposes.* . . . [emphasis added]

*Id.* at *3. The appellate court noted that the excavation of borrow pit No. 6 was not only a part of a construction project but, as a drainage pond, borrow pit No. 6 was itself an improvement. The appellate court cited with approval *Embree v. American Cont'l Corp.*, 684 P.2d 951 (Colo. Ct. App. 1984), wherein it was held that the grading of a lot was an "improvement to real property." *Id.* at *4. The appellate court reasoned, "[I]t is untenable to contend that dirt placed onto a highway right-of-way to construct and build up the roadbed for the highway would not be an improvement to real property." *Id.*

On appeal, the Walker defendants note that the instant case involves the removal of trees, the grading of land, and the replacement of fill dirt, all as part of the construction of a house. They argue that, under the reasoning in *MLG&W*, their actions constituted "an improvement to real property" within the meaning of Section 28-3-202. The Watkins contend, however, that this case is distinguishable from those cited by the trial court, because "filling" land is not the "construction of an improvement" for purposes of the statute. They differentiate the situation in *MLG&W* because, in *MLG&W*, the land was turned into something useful by the addition of the drainage system. It did not involve "merely pushing dirt around or removal of trees." The Watkins assert that the plain language of Section 28-3-202 contemplates the addition of an actual structure to the property. Because the instant case did not involve such an addition, they argue, the grading work performed is not governed the time limitation in Section 28-3-202.

As the Watkins note, *MLG&W* is distinguishable from the instant case in that the dredging work performed by the subcontractor involved not only the dredging of land, but also the building up of the roadbed and, as a result, the construction of a drainage pool. The court in that case, however, did not base its conclusion solely on the fact that the dredging work resulted in an addition to the land. Rather, the *MLG&W* court explained that the subcontractor's work adapted the land for the purpose of constructing the highway. Indeed, the definition of "improvement" adopted by the court provides that an "improvement" can be an addition *or* an amelioration in the condition of the land "intended to enhance its . . . utility or to adapt it for new or further purposes." *MLG&W*, 1986 WL 11588, at *3. In this case, it is undisputed that the removing of trees and the grading of the lot in question was intended to enhance the utility of the property, or to adapt it so that it would be a suitable site for the building of a house. The grading of the land performed by the Walker defendants was necessary to ready the land for construction. We agree with the reasoning in *Embree*, cited in *MLG&W* and decided on similar facts, where the Colorado court noted that "grading is essential and integral to the construction and completion of a house and is, therefore, part of the improvements to the real property." *Embree*, 684 P.2d at 952. Thus, we must affirm the trial court's finding that the removal of trees, grading, and fill work performed by the Walker defendants constituted an improvement to the real property.

Clearly, application of the four-year statute of repose in this case results in a disquieting outcome, since the damages alleged are unlikely to surface within the time limitation for bringing suit. The Watkins submitted evidence that the abnormal settling of their house was due to the fact that the lot had been filled with biodegradable materials, such as tree stumps and roots, when the lot was developed, and that the biodegradable material decayed over time and ultimately resulted in the house settling unevenly. Assuming the truth of these allegations, which we must at this point, then it is most likely that the damage to the house would not be discoverable until the four-year time limitation had run, leaving the Watkins with no recourse against any negligent party. Nevertheless, where the statute is clear, we must apply it as written, even if the result is harsh.[6] As such, we must find that the Watkins' lawsuit is barred under Tennessee Code Annotated § 28-3-202.

---

[6]This situation is likely to recur and should be addressed by our Legislature.

The decision of the trial court is affirmed.  Costs on appeal are to be taxed to Appellants Rick Watkins and Ellen Watkins, and their surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE