IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 22, 2014 Session

# REELFOOT UTILITY DISTRICT OF LAKE COUNTY, TENNESSEE
v.
# SAMBURG UTILITY DISTRICT OF OBION COUNTY, TENNESSEE, AND HORNBEAK UTILITY DISTRICT OF OBION COUNTY, TENNESSEE

### An Appeal from the Chancery Court for Obion County
### No. 30,034    W. Michael Maloan, Chancellor

_____

### No. W2013-01952-COA-R3-CV - Filed August 27, 2014

_____

This appeal involves water service by one utility district to a neighboring utility district. The plaintiff utility district provided water service to the defendant neighboring utility district for many years pursuant to a series of contracts. The last contract included a date certain on which the contract expired. Before the expiration date, the defendant neighboring utility district agreed to begin purchasing its water from a different provider upon expiration of the water service contract with the plaintiff. The plaintiff filed this lawsuit seeking, *inter alia*, to enjoin the defendant provider and the neighboring utility district from entering into a contract for water services. The trial court granted summary judgment in favor of the defendant neighboring utility district and denied the plaintiff's motion for summary judgment, holding that the defendants were permitted to contract for water services. It then dismissed all remaining claims against the defendants. The plaintiff now appeals. We affirm the decision of the trial court in all respects.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

James S. Wilder, III, and Scott K. Haight, Dyersburg, Tennessee, for the Appellant, Reelfoot Utility District of Lake County, Tennessee

Joe D. Spicer and Bradford J. Spicer, Memphis, Tennessee, for the Appellee, Samburg Utility District

Damon E. Campbell, Union City, Tennessee, for the Appellee, Hornbeak Utility District

## OPINION

### FACTS AND PROCEEDINGS BELOW

The underlying facts in this appeal are undisputed. Plaintiff/Appellant Reelfoot Utility District ("Reelfoot") is a utility district located in Lake County, Tennessee. Defendant/Appellee Samburg Utility District ("Samburg") and Defendant/Appellee Hornbeak Utility District ("Hornbeak") are utility districts located in Obion County, Tennessee.[1] All of these utility districts were established pursuant to Tennessee law and are subject to Tennessee law.

In 1965, upon formation of the Samburg Utility District, Samburg and Reelfoot both wanted Reelfoot to supply Samburg's water needs. To this end, Reelfoot extended a water service line to a meter point on the border between Lake County and Obion County. In turn, Samburg installed a water line on the Obion County side to receive water from Reelfoot that would go through the meter.

In 1965, Samburg and Reelfoot entered into the first of three water supply contracts. The first contract was effective from September 1, 1965, through August 31, 2000, a duration of 35 years. Samburg and Reelfoot then entered into a second contract in 2001, effective from August 1, 2001, through July 31, 2006. They entered into the third and final contract in 2008; it was effective from August 1, 2008, through July 31, 2013 ("2008 Contract"). Paragraph 8 of the 2008 Contract indicated a July 31, 2013 termination date: "This Agreement shall remain and continue in effect for a period of five (5) years from and after August 1, 2008, after which Seller [Reelfoot] shall terminate the delivery of water, unless a new Agreement shall be signed by the parties."

All told, Reelfoot provided water to Samburg continuously for over 48 years. Most of this time, one of the three contracts was in effect, but there were some interim periods during which no contract was in effect but Reelfoot nonetheless continued to supply Samburg's water.

In 2005, the Tennessee Department of Environment and Conservation conducted reviews of Reelfoot's infrastructure. The reviews revealed that Reelfoot's system needed upgrading, due in part to Samburg's water demands. In the wake of the reviews, Reelfoot decided to make upgrades to increase storage and resolve difficulties with water flow and water pressure. To pay for the upgrades, Reelfoot borrowed $1.2 million from the State of Tennessee Revolving Loan Fund, payable over 20 years at zero percent interest. Despite the

---

[1]Reelfoot, Samburg, and Hornbeak are all "municipalities" within the meaning of the relevant statutes.

fact that Samburg benefitted from the upgrades, it objected to Reelfoot's loan because Samburg realized that the loan would cause Reelfoot to increase its water prices.

According to Reelfoot, Tennessee's Comptroller of the Treasury required Reelfoot to charge an equity fee to its water customers to ensure repayment of the loan. Consequently, on January 28, 2005, Reelfoot passed a resolution authorizing an equity fee to its customers, including Samburg. Section 7(e) of the 2008 Contract between Reelfoot and Samburg referenced this equity fee:

> Seller [Reelfoot] has recently completed a project to upgrade its lines, facilities and the fire protection capabilities for not only the benefit of the Seller [Reelfoot], but also the benefit of the Buyer [Samburg]. As a result, Seller [Reelfoot] has obligated itself to the State of Tennessee for the repayment of a revolving loan at zero percent interest for twenty (20) years. This repayment will require the payment of an equity fee by all its customers including the Buyer [Samburg].

Sales to Samburg accounted for 62 percent of Reelfoot's gross revenues.

For reasons that are not clear in the record, Samburg decided not to renew its water contract with Reelfoot after expiration of the 2008 Contract. In 2012, Samburg began negotiating a contract to buy its water from Hornbeak beginning August 1, 2013. In anticipation of a water supply agreement with Samburg, Hornbeak secured financing for and extended its water lines up to Hornbeak's common border with Samburg. Samburg and Hornbeak both intended for Samburg to begin purchasing some or all of its water needs from Hornbeak after expiration of Samburg's 2008 Contract with Reelfoot.

Reelfoot learned that Hornbeak and Samburg were discussing having Hornbeak supply water to Samburg. After this discovery, on approximately August 9, 2012, Reelfoot sent a warning letter to Hornbeak, asserting that Hornbeak was unlawfully encroaching on Reelfoot's customer, Samburg. Reelfoot asserted that Tennessee Code Annotated section 7-51-401(c) gave Reelfoot the right to sell water to Samburg free of competition from other utility districts, even after expiration of the 2008 Contract. That statute provides in relevant part:

> (a) Except as provided in § 7-82-302, each county, utility district, municipality or other public agency conducting any utility service specifically including waterworks, water plants and water distribution systems . . . is authorized to extend such services beyond the boundaries of such county, utility district, municipality or public agency to customers desiring such service.

. . .

> (c) No such county, utility district, municipality or public utility agency shall extend its services into sections of roads or streets already occupied by other public agencies rendering the same service, so long as such other public agency continues to render such service.

Tenn. Code Ann. § 7-51-401(a), (c) (2011). Hornbeak did not respond to Reelfoot's letter.

On August 27, 2012, Reelfoot filed this lawsuit in the Chancery Court of Obion County, Tennessee, against both Samburg and Hornbeak. The complaint was entitled as a "Complaint for Encroachment, Breach of Contract, Inducement to Breach of Contract, Interference with Business Relations, Violation of T.C.A. § 10-7-503, and Motion for a Preliminary Injunction." It asserted all of the legal theories listed in the heading and sought compensatory and punitive damages as well as injunctive relief.

Upon the filing of the complaint, Reelfoot was granted a temporary restraining order enjoining Samburg and Hornbeak from, among other things, connecting their water lines. On September 6, 2012, the trial court entered a consent order reflecting the parties' agreement to permit Hornbeak to complete the laying of its new pipeline during the pendency of the proceedings, but leaving in place the injunction prohibiting Samburg and Hornbeak from connecting their water lines. Discovery ensued.

On May 20, 2013, Reelfoot filed a motion for summary judgment. In the motion, Reelfoot claimed that it was entitled to judgment as a matter of law because "T.C.A §7-51-401(c) applies to this case and [Hornbeak] should be permanently restrained and enjoined from providing water to [Samburg] so long as [Reelfoot] is capable of supplying water to [Samburg]." In support, Reelfoot filed a statement of undisputed facts.

On June 6, 2013, Samburg filed a cross-motion for summary judgment. In its motion, Samburg argued that the 2008 Contract between Reelfoot and Samburg would expire by its own terms on July 31, 2013, and that once the 2008 contract with Reelfoot expired, Samburg would be free to contract with the water supplier of its choice. Samburg contended that contracting with another water supplier after July 31, 2013 would not constitute a violation of section 7-51-401(c).

On July 29, 2013, the trial court conducted a hearing on the cross-motions for summary judgment filed by Reelfoot and Samburg. The next day, July 30, 2013, the trial court entered an order granting Samburg's motion for summary judgment and denying Reelfoot's motion for summary judgment. The trial court held that the material facts were undisputed, and that

section 7-51-401(c) did not prohibit Samburg from contracting with Hornbeak for its water supply after expiration of Samburg's contract with Reelfoot:

> T.C.A. § 7-51-401(c) prohibits a utility district from providing services "so long as such other public agency (Reelfoot) continues to render such service." Reelfoot submits in its motion that T.C.A. § 7-51-401(c) prohibits the defendant Hornbeak Utility District (Hornbeak) from providing services to Samburg for so long as Reelfoot "is capable of supplying water to the Samburg Utility District." The Court agrees the statutory authority is to discourage competition among utility districts and if it were not for the expiration of the current contract on July 31, 2013 between Reelfoot and Samburg, the Court would enjoin Hornbeak from providing services to Samburg. The Court finds the statute does not mean "capable of supplying water" but requires actually providing services to Samburg which Reelfoot cannot do beginning August 1, 2013 unless "a new agreement has been signed by the parties."
>
> Samburg submits in its motion for summary judgment that it is free to negotiate with Reelfoot and/or Hornbeak to provide its water needs. This Court agrees.
>
> Therefore, Samburg's motion for summary judgment is granted and Reelfoot's motion for summary judgment is denied.

Thus, the trial court noted that the contract between Reelfoot and Samburg would terminate on July 31, 2013, and that Reelfoot and Samburg had not signed a new contract. Consequently, the trial court held, after July 31, 2013, Reelfoot would not be "continu[ing] to render . . . service" to Samburg, so section 7-51-401(c) did not apply. The trial court's July 30, 2013 order did not expressly address Reelfoot's claims against Hornbeak or any of the other claims in Reelfoot's complaint.

Reelfoot filed a motion to keep the temporary injunction in place pending its appeal. On July 31, 2013, the trial court granted Reelfoot's motion; it entered an order keeping in force the injunction prohibiting Samburg and Hornbeak from connecting their water lines pending resolution of any appeal. Thus, while this appeal has been pending, Reelfoot has been permitted to continue to sell water to Samburg pursuant to the injunction.

On August 20, 2013, the trial court entered an agreed final order. The order held Samburg liable to Reelfoot for $3,780.00, the amount remaining due under the 2008 Contract. The trial court allowed Reelfoot to voluntarily dismiss its claim against Hornbeak for inducement to

breach and for violation of section 10-7-503. From this order, Reelfoot filed a notice of appeal.

On December 5, 2013, pursuant to an order of this Court, the trial court entered a supplemental final order dismissing counts one (encroachment) and four (interference with business relations) against both Samburg and Hornbeak. Now that the Court has a final, appealable judgment, we consider the issues raised on appeal.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Reelfoot raises three issues:

> 1. Whether the trial court erred in failing to properly apply section 7-51-401(c), which prohibits one utility from competing with an existing utility by seeking to serve customers of the existing utility when the existing utility is capable of providing services to its customers?
>
> 2. Whether the trial court erred in failing to determine that the 2008 Contract between Reelfoot and Samburg was merely an agreement to establish water rates, and that the expiration of that agreement on July 31, 2013, did not end the long-standing relationship between Reelfoot and Samburg, and that this relationship is the type that is protected under section 7-51-401(c)?
>
> 3. Whether the trial court erred by ruling that the expiration of the 2008 Contract meant that Reelfoot was no longer capable of providing water services to Reelfoot, when Reelfoot was capable and desirous of continuing to provide water service to Samburg after the expiration of that contract?

Summary judgment is appropriate where the moving party is entitled to judgment as a matter of law on the undisputed facts. Tenn. R. Civ. P. 56.04. Where the facts are undisputed, this court reviews the grant of summary judgment *de novo* with no presumption of correctness. ***City of Tullahoma v. Bedford County***, 938 S.W.2d 408, 412 (Tenn. 1997).

The issues presented in this appeal involve the interpretation of section 7-51-401(c) and its application to this case in light of the 2008 Contract between Reelfoot and Samburg. Issues involving the interpretation of a statute are questions of law, which we review *de novo* on the record, giving no deference to the decision of the trial court. ***In re Estate of Davis***, 308 S.W.3d 832, 837-38 (Tenn. 2010). The Tennessee Supreme Court has referenced a number of "well-defined" precepts for interpreting a statute. "Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope."

*Id.* at 838 (citing ***Houghton v. Aramark Educ. Res., Inc.***, 90 S.W.3d 676, 678 (Tenn. 2002)). "When a statute is clear, we apply the plain meaning without complicating the task. Our obligation is simply to enforce the written language." *Id.* (citation omitted). Generally, the court references the broader statutory scheme, the history of the legislation, or other sources only where the statute at issue is ambiguous, that is, fairly interpreted in more than one way. *Id.*

Similarly, when the material facts are not in dispute, the interpretation of a contract presents a question of law, so the appellate court reviews the trial court's interpretation of a contract *de novo* on the record. ***Maggart v. Almany Realtors, Inc.***, 259 S.W.3d 700, 703 (Tenn. 2009). "The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles." *Id.* at 703-04 (quoting ***Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.***, 521 S.W.2d 578, 580 (Tenn. 1975)). "If the language of the contract is clear and unambiguous, the literal meaning controls the outcome of the dispute. In such a case, the contract is interpreted according to its plain terms as written, and the language used is taken in its plain, ordinary, and popular sense." *Id.* at 704 (citations omitted; internal quotations omitted).

## ANALYSIS

On appeal, Reelfoot argues that the trial court misinterpreted section 7-51-401(c) under the facts of this case. It contends that the statute prohibits Hornbeak from soliciting a water services contract with Samburg, and likewise prohibits Samburg from looking elsewhere for its water services, so long as Reelfoot continues to be capable of providing water service to Samburg. It claims that section 7-51-401 was designed to address precisely this type of situation; unlike private business interests, it asserts, utility districts are not at liberty to compete with one another once one utility district has begun providing water to another utility district.

As background, prior to section 7-51-401(c), Tennessee law generally permitted utility providers to serve customers only within the geographic boundaries of their designated service area. *See* Tenn. Code Ann. § 7-82-101, *et seq.* (Utility Law of 1937). In 1949, the General Assembly enacted section 7-51-401, under which a utility provider may provide service beyond the boundaries of its designated service area "to customers desiring such service." Tenn. Code Ann. § 7-51-401(a). As quoted above, section 7-51-401(c) states that no utility district "shall extend its services into sections of roads or streets already occupied by other public agencies rendering the same service, so long as such other public agency continues to render such service." *Id.* § 7-51-401(c).

Samburg and Hornbeak (collectively, "Appellees") maintain that the trial court correctly held that section 7-51-401(c) does not apply to the facts as presented in this case.[2] They point out that the statute expressly provides that a utility cannot "extend its services" to an already-occupied utility "so long as such other public [utility] continues to *render such service*" to the already-occupied utility. *Id.* (emphasis added). Upon expiration of the 2008 Contract, Appellees argue, Reelfoot no longer rendered service to Samburg because the parties never entered into a new agreement. Because Reelfoot was not lawfully rendering service to Samburg after the 2008 Contract expired on July 31, 2013, they claim, the statute is inapplicable on its face. Moreover, Appellees argue, Samburg has the statutory right to enter into a contract with a third party of its choosing under its general authority, and section 7-51-401(c) does not supersede that right.

In response, Reelfoot argues that the purpose of section 7-51-401 was to prevent competition between utilities, where a utility has historically been providing service to another and continues to be capable of continuing to do so. In support, Reelfoot cites Attorney General Opinion No. 01-125, 2001 WL 964162 (Tenn. A.G. Aug. 7, 2001) ("AG Opinion").

Under the hypothetical posed to the Attorney General in the AG Opinion, Town A built its own sewage treatment plant at a time when customers both inside and outside Town A's boundaries were using Town B's sewage treatment system. The question presented to the Attorney General was whether Town A could require all of Town A's customers to use its new "sewer service and require those presently using Town B's sewage treatment system to switch to Town A's system?" *Id*. at *1. The Attorney General opined that a court presented with this situation would conclude that, under section 7-51-401(c), "Town A is not authorized to extend sewer service into areas outside its boundaries that are already being served by Town B's System." *Id.* at *1. The AG Opinion said that, "while cities generally have exclusive authority to provide utility service within their corporate boundaries, a court could conclude that Town A is estopped from forcing residents within its limits to switch service if Town B initially provided service within the limits with the consent, express or implied, of Town A." *Id.* It added: "A court could also conclude that, in view of various statutes authorizing cities to cooperate in the provision of utilities, cities are not authorized to compete with one another by such a method." *Id.* Reelfoot argues that this supports its argument that one utility provider may not compete by soliciting business from a proposed customer when that customer is already being served by another utility provider.

We respectfully disagree with Reelfoot's assertion that the AG Opinion is applicable in this case. Under the hypothetical presented to the Attorney General in the AG Opinion, Town

---

[2]Samburg and Hornbeak filed separate appellate briefs, but many of their arguments on appeal are either the same or consistent, so we refer to their arguments together unless otherwise indicated.

A seeks to require customers *presently being served* by Town B's sewage system to abandon their current provider and switch to Town A's new sewage system. In contrast, in the case at bar, all parties — Reelfoot, Samburg, and Hornbeak — intended to honor the 2008 Contract until the expiration date, and Hornbeak seeks to provide service to Samburg only after Samburg's contractual relationship with Reelfoot has ended. Moreover, the AG's hypothetical asks for an opinion from the provider's standpoint, that is, whether the provider can *require* a customer to switch to the provider. The instant case presents the converse; the question in this appeal is whether the *customer* – Samburg – is free to choose a different provider once its contract with the current provider has expired. Thus, for a number of reasons, the AG Opinion is not applicable under the facts presented in this appeal.[3]

Taking a different tack, Reelfoot argues that section 7-51-401(c) is applicable because the parties' business relationship did not terminate on July 31, 2013. Reelfoot claims that the 2008 Contract only serves to memorialize the ongoing 48-year relationship between Reelfoot and Samburg. In other words, Reelfoot asserts, the 2008 Contract is "merely an agreement to establish the rate that Reelfoot charged for providing water service to Samburg, one in a long history of such similar agreements, and that the expiration of such rate agreement did not end the long-standing relationship between Reelfoot and Samburg."

The plain language in the 2008 Contract belies Reelfoot's assertion. The 2008 contract not only provides that Reelfoot must "terminate the delivery of water" to Samburg on July 31, 2013, it specifies that the termination is permanent "unless a new Agreement shall be signed by the parties." When the language of a contract is plain, simple, and unambiguous, as is the termination provision of this contract, we must enforce the contract as written without complicating the task. ***Eastman Chem. Co. v. Johnson***, 151 S.W.3d 503, 507 (Tenn. 2004).

Reelfoot maintains that it "continues to render . . . service" to Samburg within the meaning of section 7-51-401(c). That subsection prohibits a utility from "extend[ing] its services into sections of roads or streets already occupied by other public agencies rendering the same services . . . *so long as such other public agency continues to render such service.*" Tenn. Code Ann. § 7-51-401(c) (emphasis added). Under Reelfoot's construction, so long as Reelfoot is willing and able to provide Samburg water service and its water service to Samburg has not in fact been interrupted, it "continues to render . . . service" to Samburg within the meaning of the statute and Samburg is obliged to continue purchasing water for its citizens from Reelfoot. Reelfoot dismisses as irrelevant the contractual provision that

---

[3]"[A]n opinion of the attorney general may be persuasive but is in no way binding authority. Such opinions do not have the import or effect of court decisions." ***Whaley v. Holly Hills Mem'l Park, Inc.***, 490 S.W.2d 532, 533 (Tenn. Ct. App. 1972). We express no opinion on the correctness of the reasoning or result in the AG Opinion; we hold only that it is not applicable under the facts in this appeal.

ends the contractual relationship between Reelfoot and Samburg as of July 31, 2013, and the fact that Reelfoot continues to provide water service to Samburg *only* because it obtained an injunction prohibiting Samburg and Hornbeak from connecting their water lines.

Reelfoot's one-sided interpretation of both section 7-51-401(c) and the 2008 Contract cannot stand. Neither the statute nor the 2008 contract compel such an interpretation, and we decline to adopt it.

Lastly, Reelfoot contends that a resolution that allows Samburg to terminate the water supply relationship with Reelfoot would be unfair in light of the fact that Reelfoot borrowed $1.2 million from the State of Tennessee in 2005 to improve its water delivery system, no doubt under the assumption that the 2008 Contract with Samburg would be renewed and Reelfoot would continue to receive revenues from Samburg to put toward repayment of the 2005 loan. The loss of Samburg as a water customer, Reelfoot points out, will mean that Reelfoot's remaining customers will have to pay substantially higher equity fees to cover Reelfoot's loan. We respectfully disagree with this argument as well. At the time Reelfoot was making its decision regarding whether to take on the 2005 loan, it had the opportunity to negotiate to lock in its water supply agreement with Samburg during the repayment period for the loan, so that it would know whether it could be assured of continued water revenues from Samburg. It chose not to do so. Nothing in this record or in the relevant statutes *requires* Samburg to continue buying its water from Reelfoot because of Reelfoot's 2005 loan.[4] Samburg's only obligation was to pay the equity fee charged by Reelfoot for the five-year duration of the 2008 Contract.

Thus, we find no error in the trial court's grant of summary judgment in favor of the Samburg. This holding pretermits other issues raised in this appeal. We affirm the trial court's holding and remand for further proceedings consistent with this Opinion, including dissolution of the injunction prohibiting Samburg and Hornbeak from connecting their water lines.

---

[4]Reelfoot cites federal law in support of its argument that Samburg is obligated to continue buying water from Reelfoot because Reelfoot borrowed money to improve its infrastructure for the benefit of its customers. We respectfully conclude that the federal law upon which Reelfoot relies is neither applicable nor persuasive in this case.

**CONCLUSION**

The decision of the trial court is affirmed, and the cause is remanded for further proceedings consistent with this opinion. Costs on appeal are to be taxed to Reelfoot Utility District of Lake County, Tennessee, and its surety for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE