IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 25, 2015 Session

## IN RE: DONTAVIS K.W.

**Appeal from the Criminal Court for Hamilton County**
No. 291544          Don W. Poole, Judge

_____

**No. E2014-01285-COA-R3-JV-FILED-MAY 26, 2015**

_____

Dontavis K.W. ("Defendant") appeals the order of the Criminal Court for Hamilton County ("the Criminal Court") committing him to the custody of the Department of Children's Services ("DCS") for an indefinite term based upon findings of delinquency and violation of probation. We find and hold that pursuant to Tenn. R. Juv. P. 35 and Tenn. Code Ann. §§ 37-1-131(a)(4) and 37-1-137(a)(1)(A) the Criminal Court did not err in the probation revocation proceeding when it ordered a disposition which would have been permissible in the original delinquency proceeding. We, therefore, affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed
Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., C.J., and JOHN W. MCCLARTY, J., joined.

David C. Veazey, Chattanooga, Tennessee, for the appellant, Dontavis K.W.

Herbert H. Slatery, III, Attorney General and Reporter; and John H. Bledsoe, Senior Counsel for the appellee, State of Tennessee.

## OPINION

## Background

Defendant was placed on probation on November 21, 2011 as a delinquent based upon a plea of guilty to possession of marijuana. Defendant was 14 years old at that time. Defendant's probation was extended multiple times during 2012 and 2013 for violations of probation. Defendant pled guilty on April 23, 2014 to three counts of violation of probation, and the Juvenile Court for Hamilton County ("the Juvenile Court") found beyond a reasonable doubt that Defendant was delinquent for resisting

arrest, vandalism, and three counts of violation of probation and committed Defendant to DCS custody for an indefinite term.

Defendant appealed the Juvenile Court's order to the Criminal Court for a *de novo* hearing. Victoria May Riddle, Defendant's juvenile probation officer, testified at the hearing. Ms. Riddle explained that Defendant initially was placed on probation on November 21, 2011 after pleading guilty to possession of marijuana, and that two days later, on November 23, 2011, Defendant was arrested for domestic assault with regard to an incident "that involved him choking his mother." Ms. Riddle testified that Defedant was found guilty of domestic assault.

Ms. Riddle testified that in December of 2011 Defendant's mother filed a petition alleging that Defendant was in violation of his probation for unruly behavior including failure to abide by curfew, coming and going without permission, and using marijuana. Ms. Riddle testified that the December 2011 petition was heard on March 20, 2012, and Defendant's probation was extended until December 31, 2012. Additionally, Defendant was ordered to do 36 hours of public service and obtain anger management counseling, among other things.

Ms. Riddle testified that another petition alleging a probation violation was filed on December 31, 2012 based upon Defendant's failure to complete his public service hours and his anger management counseling. Ms. Riddle stated that the December 2012 petition was heard in January of 2013, and that Defendant was adjudicated delinquent and his probation was extended for three more months. Defendant also was ordered to complete his previously assigned public service hours and anger management counseling within a specified time period.

Ms. Riddle testified that another petition alleging violation of probation was filed on April 26, 2013 for Defendant's failure to complete anger management counseling. At that time Defendant had 12 public service hours remaining. Ms. Riddle testified that the April 2013 petition was heard in May of 2013, at which time a private attorney was appointed to represent Defendant, the case was continued, and Defendant's probation was extended until the next hearing.

Ms. Riddle's supervision of Defendant ended when Defendant was placed in DCS custody on April 23, 2014. Ms. Riddle was asked whether Defendant had complied with the conditions of his probation during the time period from December of 2013 through April 23, 2014 during which she was supervising him, and she stated:

> He didn't comply. He was - - he didn't follow the rules of - - the
> simple rules that we had set which was contacting me on a weekly basis,

coming in to see me was a problem. He was still using - - or smoking marijuana, and also at some point he was also drinking alcohol, she[1] admitted to me in an office - - in one of the office visits he did come to. School is a big - - was a big issue with him. He was always getting suspended. And there were times he did not - - there was one point he did not show up for court either, and the magistrate issued an attachment from the bench for him as a result of that.

Ms. Riddle was asked if Defendant ever told her why he had failed to show up for court, and she stated: "He did not, but his mother had mentioned that he just refused to come. She tried to get him to come to court, asked him several times, and he refused to - - to obey her and obey the Court and come to the court hearing."

Ms. Riddle testified that Defendant's mother was able to bring Defendant in later on the day that the magistrate issued the attachment. Ms. Riddle explained:

[W]hen the magistrate signs off on the attachment, it's saying that there is a legitimate reason to execute it and that the child can be picked up at any time, once he is found, and brought to the juvenile detention center.

Once they're in the juvenile detention center, they have what's called a detention hearing the very - - at least the very next day. At times it can be the same day. It's just according to what time they arrive at the court or at the juvenile detention center. And then at that time it's decided - - the magistrate decides whether or not the child should be held in the unit till the next court date or if he can be - - or if that child can be released home under whatever conditions the Court may desire.

Ms. Riddle testified that Defendant was held at the detention center. She stated that he was held "almost one month. It was right at one month."

Ms. Riddle testified about what happened during the hearing held to determine whether to hold Defendant at the detention center stating:

[T]he Court was trying to decide how long to hold him in - - in the detention center. And when they were discussing it, they came out with the court date which was about a month later, it was right at a month later, and

---

[1] It is unclear from the record on appeal whether Ms. Riddle was referring to Defendant's mother or whether this is a typographical error meant to refer to Defendant. It is not relevant to our analysis of the issue on appeal that we determine exactly to whom Ms. Riddle was referring when she made this statement.

when he heard that, he actually began to act out. He started yelling and cursing, calling the magistrate obscenities, tried to get up out of the chair even though he was shackled.

He was also approached, when that occurred, by a court officer. The court officer had to make him sit back down in the chair. As the court officer was doing that, he also yelled profanities and - - toward the court officer and was screaming - - using profanity, talking about not being held for a month till the next court date.

Ms. Riddle testified that Defendant never completed his anger management counseling or his remaining 12 public service hours.

After a hearing, the Criminal Court entered its order on July 11, 2014 *nunc pro tunc* to June 30, 2014 finding and holding, *inter alia*:

2) That the defendant-juvenile's probation had been extended multiple times for failure to cooperate, being unruly and using marihuana [sic], not completing anger management, not following the rules of probation including not contacting his probation officer, continually smoking marihuana [sic], not attending school, using alcohol, not showing up for court after being summons [sic] in to court at which time he refused to come to court and acting out at court by yelling, cursing.
3) That the defendant-juvenile did in fact plead guilty to the three (3) violations of probation on April 23, 2014.

That based upon the foregoing, the continual violations of probation, it is determined that the juvenile-defendant is in need of treatment and rehabilitation and should be committed to D.C.S./J.J.D. for an indefinite period of time . . . .

Defendant appeals the order of the Criminal Court committing him to the custody of DCS for an indefinite term.[2]

## **Discussion**

The dispositive issue in this case is whether the Criminal Court erred in

---

[2] Defendant filed his appeal with the Court of Criminal Appeals. By order entered July 11, 2014 the Court of Criminal Appeals transferred the appeal to this Court pursuant to Tenn. R. App. P. 17 because jurisdiction over appeals of criminal court orders concerning *de novo* appeals of juvenile court judgments in delinquency proceedings lies with the Court of Appeals. Tenn. Code Ann. § 37-1-159(c) (2014).

committing Defendant to the custody of DCS for violation of probation. This issue presents a question of law, which we review *de novo* with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). Analysis of the issue on appeal involves interpretation of statutes and a rule of juvenile procedure. Our Supreme Court has instructed:

> When dealing with statutory interpretation, well-defined precepts apply. Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006). It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources. *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998).

*Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011). "Although the rules of civil procedure are not statutes, the same rules of statutory construction apply in the interpretation of rules." *Thomas v.Oldfield*, 279 S.W.3d 259, 261 (Tenn. 2009).

As pertinent to the issue now before us Tenn. R. Juv. P. Rule 35 provides:

**Rule 35. Probation Revocation – Termination of Home Placement. –**
(a) PROCEDURE. Proceedings to revoke probation shall be conducted in the same manner as proceedings on petitions alleging delinquent or unruly conduct. Proceedings to terminate home placement shall be conducted in the same manner as proceedings on petitions delinquent or unruly conduct and in accordance with Tenn. Code Ann. § 37-1-137. The child whose probation or home placement is sought to be revoked shall be entitled to all rights that a child alleged to be delinquent or unruly is entitled to under law and these rules, except that the petition shall be styled "Petition to Revoke Probation" or "Petition to Terminate Home Placement" and shall, in addition to fulfilling the other requirements for petitions set forth in Rule 9, state the terms of probation or home placement alleged to have been violated and the factual basis for these allegations.

(b) DISPOSITION IN REVOCATION OF PROBATION CASES.  If the child is found by a preponderance of the evidence to have violated a term of probation, the court may:

(1) Extend the period of probation, or

(2) Make any other disposition which would have been permissible in the original proceeding.

(c) DISPOSITION IN TERMINATION OF HOME PLACEMENT CASES. Dispositions in termination of home placement cases shall be as provided in Tenn. Code Ann. § 37-1-137.

Tenn. R.  Juv. P. 35.

Two specific statutory sections are relevant to our analysis of the issue now before us.  In pertinent part, Tenn. Code Ann. § 37-1-131 provides:

**37-1-131.  Delinquent child – Disposition – Restitution.**

(a) If the child is found to be a delinquent child, the court may make any of the following orders of disposition best suited to the child's treatment, rehabilitation and welfare:

\* \* \*

(4) Subject to the restrictions of § 37-1-129(e), commit the child to the department of children's services, which commitment shall not extend past the child's nineteenth birthday;

Tenn. Code Ann. § 37-1-131(a)(4) (2014).  As pertinent, Tenn. Code Ann. § 37-1-137 provides:

**37-1-137.  Commitment of delinquent children to the department of children's services.**

(a)(1)(A) An order of the juvenile court committing a delinquent child to the custody of the department of children's services shall be for an indefinite time.

Tenn. Code Ann. § 37-1-137(a)(1)(A) (2014).

The plain and unambiguous language of Tenn. R. Juv. P. 35 provides that if a court finds by a preponderance of the evidence that a child has violated probation, the

court may "[m]ake any other disposition which would have been permissible in the original proceeding." Tenn. R. Juv. P. 35. In the case now before us the Criminal Court found by a preponderance of the evidence that Defendant had violated probation, and, in fact, had "plead guilty to the three (3) violations of probation on April 23, 2014." Given this, pursuant to Tenn. R. Juv. P. 35 the Criminal Court was free to "[m]ake any other disposition which would have been permissible in the original proceeding." Tenn. R. Juv. P. 35. Under Tenn. Code Ann. § 37-1-131(a)(4), one of those permissible dispositions was to "commit the child to the department of children's services, . . . ." Tenn. Code Ann. § 37-1-131(a)(4) (2014). Given all this, we find no error in the Criminal Court's order committing Defendant to the custody of DCS. We, therefore, affirm the Criminal Court's July 11, 2014 order.

## Conclusion

The judgment of the Criminal Court is affirmed, and this cause is remanded to the Criminal Court for collection of the costs below. The costs on appeal are assessed against the appellant, Dontavis K.W.

_____
D. MICHAEL SWINEY, JUDGE